## Commonwealth *v.* Taylor, Appellant.

Argued September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Peter T. Campana,* with him *Campana & Campana,* for appellant.

*Gregory V. Smith,* Assistant District Attorney, with him *Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

Opinion by Watkins, P.J., December 1, 1975:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, of Lycoming County, by the defendant-appellant, James D. Taylor, after conviction in a non-jury trial of operating a motor vehicle while under the influence of intoxicating liquor; from the denial of his petition to suppress evidence, and from the denial of the post-trial motions. He had been found guilty of involuntary manslaughter also, but his motion for arrest of judgment was granted by the court below on that charge.

The first issue he raises is that his consent to a blood alcohol test was not knowingly and willingly made and the court below erred in denying his petition to suppress the evidence. The court below, following his suppression hearing before Judge Thomas C. Raup, made the following findings of fact:

"On March 9, 1974, the Defendant, James D. Taylor, was involved in a motor vehicle accident and was taken to the Jersey Shore Hospital. Officers of the Jersey Shore Police radioed to that hospitel to request a blood sample be obtained from the defendant. Upon arrival at the hospital the officers were advised by employees of the hospital that the defendant had refused. Officer Eichenlaub asked the defendant if he would consent to a blood-alcohol test and the defendant responded that he wanted to confer with his parents. The defendant is a 21 year old male. The hospital refused to extract blood unless there was a consent by the patient. The police officers conferred with the County District Attorney and advised the defendant that if he did not consent to a blood alcohol test that they would proceed to obtain a search warrant and take him to the Williamsport Hospital for extraction of blood pursuant to the warrant, the Jersey Shore Hospital having advised them that even with a warrant they would not permit the extraction of blood

unless there was consent. The defendant talked for approximately 10 minutes with his mother and in addition talked to a Mr. Ludwig, a friend of his, and to the doctor and a nurse with respect to the advisability of consenting to the test before agreeing to sign a written consent to submit to a blood test. Although the defendant was indecisive initially, the Court finds that he was aware of what he was doing and of the nature and quality of his act in consenting."

After trial, he raised this question before the trial Judge Charles F. GREEVY, who in his opinion said:

"We have reviewed the finding of fact, conclusions of law and order filed by The Honorable Thomas C. RAUP and are in agreement that the defendant's consent to the blood-alcohol test was knowingly and willingly made and that the defendant's constitutional rights were not violated by the police in obtaining the blood sample."

We are in agreement with the court below.

The appellant also contends that the evidence was insufficient to sustain the verdict. The facts presented at trial were as follows: Late in the afternoon of March 9, 1974, an automobile accident occurred near Stavertown, Pennsylvania. It was a collision between two automobiles so that both cars were disabled and ended up off the north side of old Route 22. There were no witnesses to the accident except the appellant who did not testify. Witnesses arrived at the scene immediately after the accident and testified to the location and condition of the two cars. Witnesses testified that the appellant was the only occupant of the Ford Thunderbird vehicle and the other car, the Ford Galaxie, contained the dead body of Alfred J. Brion. No one else was in either vehicle. The defendant was asked if he was all right and he replied he was. When asked if he wanted help out of the car, he said, "No, get me the fire company and the ambulance." A few minutes later he was again asked if he wanted

help out of the car. He said, "No, I will sit here," but soon he changed his mind and said, "Help me out." The door of the driver's side was jammed, and two persons forced it open and helped the defendant out. He fell out onto one of the men who had to help him for five to ten minutes. Witnesses testified to smelling alcohol on his breath while he was being helped into the ambulance. The result of the blood test taken at the hospital showed .21. A series of pictures taken at the scene were introduced into evidence and visibly showed the location of the car after the accident and the extent of the damages to both vehicles.

In determining motions in arrest of judgment, the evidence is to be viewed in the light most favorable to the Commonwealth and the Commonwealth is entitled to all reasonable inferences arising therefrom. *Commonwealth v. Hornberger,* 441 Pa. 57, 60, 270 A. 2d 195, 197 (1970).

The appellant contends that in order to establish the offense of drunken driving, the Commonwealth must prove (1) that the defendant was operating the vehicle and (2) while under the influence of liquor and the Commonwealth failed to prove that the appellant was driving at the time of the accident.

The court below said: "Had defendant elected to have his case submitted to the jury the trial judge's instructions would have included a charge on circumstantial evidence and on the definition of the word 'operate'."

In *Commonwealth v. Kallus,* 212 Pa. Superior Ct. 504, 507-508, 243 A. 2d 483, 485 (1968), we held that "It is not necessary that the vehicle itself must be in motion but it is sufficient if the operator is in actual physical control of the movements of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself." The word "operate", therefore, does not mean the Commonwealth must prove the defendant was, in fact, operating the vehicle in

motion but must only prove beyond a reasonable doubt that the defendant was in the vehicle, behind the wheel and had the control and management of it.

It seems illogical and unreasonable to permit the operator of a vehicle to be exonerated from the responsibility and liability for his actions simply because there were no witnesses except the appellant who saw the accident or the appellant driving. Under the circumstances of this case the trier of facts had sufficient circumstantial evidence to find that the defendant was in actual physical control of the vehicle.

In *Commonwealth v. Kloch,* 230 Pa. Superior Ct. 563, 327 A. 2d 375 (1974), the appellant was seen seated behind the wheel of an automobile in which he was seated, the vehicle was parked mostly on the highway, the motor was running and the lights were on. This Court held that the appellant was driving and had driven to where he was found, stopped there without pulling completely off the highway, left the motor running to provide some warmth, left the lights on to provide some safety, and then had fallen asleep. In short, the trier of fact could reasonably infer that the car was where it was and was performing as it was because of appellant's choice from which it followed that appellant was in "actual physical control" of and so was "operating" the car while he slept.

In the instant case, the actual driving of the automobile ended in a violent collision that sent his vehicle off the highway. He was seated on the driver's side after the crash, and as in *Commonwealth v. Kloch,* supra at 579, it could be inferred that the car was where it was and the condition in which it was because of appellant's choice "from which it followed that appellant was in 'actual physical control' of and so was 'operating' the car . . .". This "physical control" continued in the appellant after the collision had immobilized his car.

Judgment of sentence affirmed.

JACOBS and HOFFMAN, JJ., concur in the result.