450 A.2d 704

COMMONWEALTH of Pennsylvania

v.

James DEVEREAUX, Appellant.

Superior Court of Pennsylvania.

Argued June 21, 1982.

Filed Sept. 10, 1982.

George P. Noel, Media, for appellant.

Joseph Carroll, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before WICKERSHAM, McEWEN and LIPEZ, JJ.

WICKERSHAM, Judge:

The district attorney of Chester County, by information, charged James Devereaux, appellant herein, with having, on February 29, 1980, driven a vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving.

### § 3731. Driving under influence of alcohol or controlled substance

(a) Offense defined.—A person shall not drive any vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

75 Pa.C.S. § 3731.

On May 29, 1980, James Devereaux went on trial before the Honorable Thomas A. Pitt, Jr. and a jury, following which trial Devereaux was found guilty. Post-trial motions were filed, argued and denied; on December 5, 1980, Devereaux was sentenced by the court to pay a fine of $100 plus costs. This appeal followed.[1]

1. Appellant frames the issues on this appeal in the following manner:

At trial, Anthony D. Minnis testified for the Commonwealth. He said he was twenty-two years of age and on February 29, 1980 he was a volunteer with the Berwyn Fire Company. At about 10:30 p. m. on that night he was in the driveway of his home about three-tenths of a mile from the intersection of Devon State Road and Spencer Road. It was a cold, clear and dry evening. He heard a crash and proceeded to the intersection, arriving in less than a minute. Mr. Minnis testified as follows:

A. ... a car off to the side of the road with the headlights on. I proceeded down to the scene to see if it had been an accident. At which time I determined that it was.

. . . .

Q. Did you see anyone in the area of that car?

A. Only one person.

Q. And this person that you saw in the area of that car, where did you see him?

A. Outside the car.

Q. What was he doing?

A. He was attempting to get into the car and I would imagine to check on the person inside.

Q. Did he have anything in his hand?

A. Yes, sir. He had a flashlight.

. . . .

Q. But he was standing outside the car?

A. Yes, sir.

. . . .

A. I observed that he now had the door open, the person standing outside of the vehicle, and that upon my arrival,

I. Did the Commonwealth establish beyond a reasonable doubt that the appellant was the driver of the vehicle in which he was found, such that his convictions were [sic] violating 75 P.S. 3731 can be sustained?

II. Did the lower court err in admitting statements made by the appellant as being voluntary where the appellant was visibly intoxicated and suffering from injuries sustained in an automobile accident?

Brief for Appellant at 2.

he was leaning into the car. I asked him to move and then I noticed another person seated in the passenger seat of the vehicle who appeared to be injured.

Q. Did you see anyone else in that car?

A. No, sir.

Q. Did you see anyone else standing around that car?

A. No, sir.

Q. What did you do after you moved this person with the flashlight out of the way?

A. I climbed into the driver's side of the vehicle and checked the patient, the obvious things, like air-way breathing, anything of that nature, any obvious injuries.

Q. What, if any, damage to the car did you observe?

A. I noticed damage to the right-hand passenger door.

Q. And describe that damage for us, if you would.

A. It appeared that the door had been pushed in by some object. There was also glass on the floor of the vehicle, the door was pushed into the passenger compartment.

Q. Now, you say you observed glass in the car; did you observe glass outside the car?

A. No, sir.

Q. Now, where in the car did you see the glass?

A. On the floor of the passenger side.

Q. Anywhere else?

A. No, sir.

. . . .

Q. Did you notice any odor at this time?

A. Yes, sir.

Q. What odor was that?

A. The odor of alcohol.

Q. And did it appear to be a strong or weak odor?

A. Strong odor.

. . . .

Q. All right. Did you talk to him?

A. Yes, I did. Upon arrival I asked if he could speak to me, at which time he did mumble. And I advised him that he had been in an auto accident, at which time he in-

formed me that he hadn't been. I once again told him that he had been in an auto accident, at which time he informed me once again that he hadn't been, and that I was attempting to set him up.

. . . .

Q. Did an ambulance person arrive?

A. Yes, they did.

Q. Did you observe the defendant get out of the vehicle?

A. Yes, I did.

Q. Would you describe what happened?

A. When we got to the driver's side of the vehicle, we attempted to assist him out of the vehicle. At which time he stated that he did not want any help. So we released him and he fell to the ground. At which time we picked him up again and then placed him on the litter.

. . . .

A. I feel that due to his actions and the smell of his breath, that he was obviously drinking. And it seemed that he had had too much to drink.

. . . .

Q. Is it your opinion that he was intoxicated?

A. Yes.

Record at 12–22.

Alan L. Singmaster of 406 Devon State Road, Chester County also testified for the Commonwealth.

Q. And do you remember something unusual happening that evening?

A. Yes, I do.

. . . .

Q. And what did you hear?

A. I heard a crash, sounded like an automobile hitting something like a telephone pole, or a wall, or a tree.

. . . .

A. After I called the police, I had to get dressed, because I was in pajamas, and it was a cold night. Got my coat on and then I went over.

. . . .

Q. Did you see if anyone was in the car at that time?

A. I believe the other witness was in the car, as well as the defendant.

Q. And what condition did the car appear to be in when you saw it?

A. I didn't observe the car that much. One side of the car looked like it was pushed in a bit from hitting something like the telephone pole.

Q. Did you stand near the car?

A. I was next to the car.

Q. Did you see—you saw Anthony Minnis inside the car?

A. As it turned out, yes.

Q. Did you hear him talking to the defendant?

A. From time to time, yes.

Q. Would you tell the Court what it was you heard the defendant say?

A. Well, to the best of my recollection, I heard Anthony Minnis trying to get the defendant to say something. Initially, he either—I couldn't hear anything that he was saying, or some mumbles. And then at another time, I heard him responding to his questions. And at one point he did mention words to the effect that he was being set up, he wasn't in an accident, he was being set up.

Record at 41–44.

The Commonwealth completed its case by calling John Howard Haggerty, a full-time police officer with the Easttown Police Department, Chester County, who discussed his investigation of the accident. There were no other witnesses called and the jury returned a verdict of guilty as aforesaid.

In this appeal, Devereaux argues that the Commonwealth has not met its burden of proving beyond a reasonable doubt that he was driving the vehicle at the time of the alleged offense.

In *Commonwealth v. Taylor*, 237 Pa.Super. 212, 352 A.2d 137 (1975), we had before us a collision between two automobiles with no witnesses to the accident except for Taylor, the

appellant, who did not testify. Witnesses arrived at the scene immediately after the accident (as in our factual situation) and testified as to the location and condition of the two cars. Witnesses testified that the appellant Taylor was the only occupant of the Ford Thunderbird vehicle involved and the other vehicle, a Ford Galaxie, contained the dead body of one Alfred J. Brion. No one else was in either vehicle.

Speaking through former President Judge Watkins, we said:

In *Commonwealth v. Kallus,* 212 Pa.Super. 504, 507, 508, 243 A.2d 483, 485 (1968), we held that 'It is not necessary that the vehicle itself must be in motion but it is sufficient if the operator is in actual physical control of the movements of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself.' The word 'operate', therefore, does not mean the Commonwealth must prove the defendant was, in fact, operating the vehicle in motion but must only prove beyond a reasonable doubt that the defendant was in the vehicle, behind the wheel and had the control and management of it.

It seems illogical and unreasonable to permit the operator of a vehicle to be exonerated from the responsibility and liability for his actions simply because there were no witnesses except the appellant who saw the accident or the appellant driving. Under the circumstances of this case the trier of facts had sufficient circumstantial evidence to find that the defendant was in actual physical control of the vehicle.

In *Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375 (1974), the appellant was seen seated behind the wheel of an automobile in which he was seated, the vehicle was parked mostly on the highway, the motor was running and the lights were on. This Court held that the appellant was driving and had driven to where he was found, stopped there without pulling completely off the highway, left the motor running to provide some warmth, left the

lights on to provide some safety, and then had fallen asleep. In short, the trier of fact could reasonably infer that the car was where it was and was performing as it was because of appellant's choice from which it followed that appellant was in 'actual physical control' of and so was 'operating' the car while he slept.

In the instant case, the actual driving of the automobile ended in a violent collision that sent his vehicle off the highway. He was seated on the driver's side after the crash, and as in *Commonwealth v. Kloch,* supra, it could be inferred that the car was where it was and the condition in which it was because of appellant's choice "from which it follows that appellant was in 'actual physical control of' and so 'operating' the car. . . ." This 'physical control' continued in the appellant after the collision had immobilized his car.

Judgment of sentence affirmed.

Id. 237 Pa.Super. at 216–217, 352 A.2d at 139–40.

In *Commonwealth v. Arizini,* 277 Pa.Super. 27, 419 A.2d 643 (1980), Judge Spaeth set forth the burden resting upon the Commonwealth when he said:

The test in determining whether the evidence is sufficient to sustain a jury verdict 'is whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, is it sufficient to enable the trier of fact to find every element of the crimes charged beyond a reasonable doubt?' *Commonwealth v. Cristina,* 481 Pa. 44, 391 A.2d 1307, 1309 (1978), *cert. denied,* 440 U.S. 925, 99 S.Ct. 1255, 59 L.Ed.2d 479 (1979). Our inquiry is bound by two poles. While the Commonwealth does not have to establish guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence, a conviction may not be based on mere conjecture or surmise. *Commonwealth v. Madison,* 263 Pa.Super. 206, 397 A.2d 818 (1979); *Commonwealth v. Navarro,* 251 Pa.Su-

per. 125, 380 A.2d 409 (1977). Applying this test here we find the evidence sufficient.

*Id.* 277 Pa.Super. at 36–37, 419 A.2d at 648.

In *Commonwealth v. Slout,* 288 Pa.Super. 471, 432 A.2d 609 (1981), we found that there was sufficient evidence for the jury to conclude that appellee was driving the truck and therefore we reversed the trial court's order arresting judgment. When the arresting officer arrived at the scene, Slout was out of his vehicle and some distance from the scene staggering and swaying as he was attempting to cross the street. We said:

> The fact that Officer Lowmiller did not actually see Slout driving the truck is not fatal to the Commonwealth's case. In *Commonwealth v. Palmer,* 265 Pa.Super. 462, 402 A.2d 530 (1979) the defendant argued that the evidence was insufficient as a matter of law to convict him of driving under the influence because no one saw him actually driving the vehicle. The court rejected this argument because the defendant had admitted that he was the operator of the vehicle to the investigating police officer and such admission was admissible at trial as an exception to the hearsay rule.
>
> Here, the officer testified that on three different occasions Donald Slout indicated that he was the driver. The fact that he was under the influence of alcohol when he initially made this admission does not affect the admissibility of these statements but rather goes to the weight which the jury may have given this testimony. At trial the appellee did not deny that he was the driver but only stated that he did not know if he was operating the truck.

*Id.* 288 Pa.Super. at 477, 432 A.2d at 612.

In *Commonwealth v. Matsinger,* 288 Pa.Super. 271, 431 A.2d 1043 (1981), we reversed the order of the lower court sustaining appellee's demurrer because we found the evidence was sufficient to warrant an inference that appellee was driving while under the influence of alcohol. In *Matsinger,* when the police officer, who did not witness the appellee actually driving, approached the scene he saw ap-

pellee sitting in the driver's seat and leaning against the door. He noticed also that the engine was running, the transmission was in gear and the headlights were on. We said:

> In sustaining appellee's demurrer the lower court reasoned that the legislature, in enacting the current Motor Vehicle Code, "altered the elements of conduct which constitute offenses under [sections 1543 and 3731] by replacing the word 'operate' with the word 'drive,' " opinion of the Lower Court at 5, and thereby required the Commonwealth to present *direct* evidence that the vehicle was in motion at the time of the offenses charged, *id.* at 9–11. The lower court relied upon *Commonwealth v. Brown,* 268 Pa.Super. 206, 407 A.2d 1318 (1979), in which this Court, faced with comparable facts, held that the legislature had intended to restrict the range of conduct violative of section 3731 when it substituted the word 'drive' for the word 'operate.' *Id.,* 268 Pa.Superior Ct. at 208, 407 A.2d at 1319. In *Brown,* the lower court had equated the term 'driving' with 'operating' in instructing the jury on the elements of driving while under the influence of alcohol. *Id.* Finding the instruction to be incorrect, this Court stated:

>> [T]he trial court's instruction to the jury that the vehicle need not be in motion was error. In order to prove that a defendant charged with a violation of section 3731 'drove' a motor vehicle, evidence must be adduced that the vehicle was (at the time in question), in fact, in *motion.* The jury in this case, under the instructions actually given by the trial court, were not afforded the opportunity to examine the evidence according to the law.

*Id.,* 268 Pa.Superior Ct. at 211, 407 A.2d 1320 (emphasis in original). *See also Commonwealth v. Wenzel,* 13 Pa.D. & C.3d 576, 577–78 (C.P. Montgomery Co. 1979).

As the above-quoted passage indicates, *Brown* requires proof that a defendant's vehicle was in motion in order for the defendant to be convicted of driving while under the

influence of alcohol. *Brown* does not, however, require *direct* evidence of motion, as the lower court here concluded. The Commonwealth contends that it presented sufficient *circumstantial* evidence to warrant an inference that appellee's van had been in motion, and therefore that appellee had violated sections 1543 and 3731. To avoid a demurrer on the facts of this case, the inferred fact must follow beyond a reasonable doubt from the evidence adduced at trial.

*Id.* 288 Pa.Super. at 275–76, 431 A.2d at 1045.

Here, it is proper to conclude beyond a reasonable doubt that defendant had been driving the vehicle when it crashed. This was a single car accident and less than a minute after it occurred, witnesses arrived on the scene. Mr. Minnis, the first witness, testified that when he arrived at the accident scene after hearing the crash, there was no one in the vicinity other than the appellant and a man whom he saw standing by the car. The man, with a flashlight in one hand, was reaching through the driver's window with the other hand while leaning his head into the window. The jury could properly conclude that this man was not the driver because his motions were consistent with those of a man attempting to open the driver's door to determine the condition of the car's occupant, rather than those of a driver who had just exited from the vehicle following a substantial impact. The conclusion is further bolstered by Mr. Minnis' testimony that this unknown man told him when he arrived that he had already called the police. Defendant Devereaux was intoxicated and was the only person in the car. He was sitting on the passenger side, bent over, with his hands on his head. The passenger side had hit a telephone pole. The passenger side door was smashed in, and the passenger window was shattered, yet defendant's right side showed no signs of injury. His only apparent injury was a cut on his hand. There was glass all over the inside front section of the car, except for the driver's seat. Defendant was sitting on glass on the passenger side of the car. The physical facts

338

■■■■■■■■

clearly prove that defendant was driving the car at the time of the accident.[2]  Record at 12–66.

Judgment of sentence affirmed and jurisdiction of the Superior Court of Pennsylvania relinquished.  The lower court is directed to enforce the sentence.

2.  There is no merit to the second question raised in this appeal to the effect that the lower court erred in admitting certain statements made by the appellant in view of his intoxicated condition.  As we pointed out in *Commonwealth v. Slout, supra,* "the fact that he was under the influence of alcohol when he initially made this admission does not affect the admissibility of these statements but rather goes to the weight which the jury may have given this testimony." *Id.* 288 Pa.Super. at 477, 432 A.2d at 612.