J-A10018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAMES J. KINDER, | |
| Appellee | No. 261 WDA 2015 |

Appeal from the Order Entered January 16, 2015
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001315-2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 18, 2016**

Appellant, the Commonwealth, appeals from the trial court's order denying reconsideration of a prior order granting James J. Kinder's, Appellee's, motion for writ of *habeas corpus*.  Essentially, the Commonwealth complains that the case against Appellee for driving under influence of alcohol (DUI), 75 Pa.C.S. § 3802(a)(1), was erroneously dismissed for want of a *prima facie* case.  After careful review, we affirm.

The trial court summarized the operative facts as follows:

> The record reveals that David Stiffler, a volunteer firefighter in Jefferson Township, responded to the scene, as a medic, to a one-vehicle crash at Creek Lane involving an overturned pick-up truck owned by [Appellee].  Weather conditions were bad and the ground was covered in approximately six or seven inches of snow.  Upon arriving at the crash scene, Mr. Stiffler testified that "[w]e were told at that time by some bystanders that were in that area or live on that road that [the occupants] had exited the vehicle and was [*sic*] in the home.  So there was nobody in the vehicle when we

arrived." Mr. Stiffler then proceeded to the house where [Appellee] resided, based on the information gathered from the bystanders, to check on the occupants who were apparently involved in the accident.

At [Appellee]'s house, Mr. Stiffler was informed by an elderly woman that a female was just at the house but left. Mr. Stiffler believed that the elderly woman was [Appellee]'s mother. The elderly woman stated that the female went out the door and up over the hill after arguing with [Appellee]. However, [Appellee] was in the house at this time. Mr. Stiffler completed a general assessment of [Appellee] to make sure that he was not injured. Mr. Stiffler stated that he did not smell anything, such as alcohol. However, he noticed "slurred speech, and just typical interaction, I was able to tell that he had been drinking at some point." After completing a general assessment, Mr. Stiffler searched for the female occupant. When he exited the house, he noticed one set of footprints in the snow that went over the hill, into the woods, and ended at Eldersville Road. After the search, he was unable to locate her. Mr. Stiffler testified that he did not observe which occupant was driving the vehicle, nor was he informed by any of the eyewitnesses which occupant was driving.

At some point while Mr. Stiffler was in the house assessing [Appellee], Trooper Chad Weaver of the Pennsylvania State Police arrived at the crash scene. Trooper Weaver testified at the preliminary hearing on May 28, 2014, and the transcript from the preliminary hearing was admitted into evidence at the subsequent January 14, 2015 hearing before this Court. Trooper Weaver stated that he observed heavy damage to the right passenger side of the vehicle, and he did not see an operator at the scene. Further, according to Trooper Weaver, the driver's side door was pinned and could not have been an exit. Thereafter, Trooper Weaver walked up to [Appellee]'s house and questioned [Appellee], but [Appellee] never admitted to driving and never said who was driving. At the preliminary hearing, Trooper Weaver admitted that [Appellee] did not want to implicate himself or anyone else. The female occupant of the vehicle was never located or questioned. [Appellee] was placed under arrest for suspicion of DUI. After [Appellee] was arrested, Trooper Weaver found keys to the crashed pick-up truck and a bottle of pills on [Appellee].

[Appellee] was charged with [DUI] and other related charges. On May 28, 2014, a Preliminary Hearing was held before Magisterial District Judge Gary Havelka and the charges were held for court. On September 22, 2014, [Appellee] filed a Pretrial Motion seeking to have the charges dismissed. On January 14, 2015, a hearing was held on [Appellee]'s Pretrial Motion. In an Order dated January 16, 2015, this Court granted [Appellee]'s Pretrial Motion, dismissed Counts 1 and 2 of the criminal complaint, and ordered [Appellee] to appear for plea court to address his remaining summary charges. On February 9, 2015, the Commonwealth filed a Notice of Appeal. Thereafter, on February 10, 2015, this Court issued an order directing the Commonwealth to file and serve a [Pa.R.A.P. 1925(b)] Concise Statement of Matters Complained of on Appeal.... The Commonwealth filed and served its [Rule 1925(b)] on February 27, 2015.

Trial Court Opinion (TCO), 4/6/15, at 1-3 (citations omitted). The trial court issued its Rule 1925(a) opinion on April 6, 2015.

The Commonwealth now presents the following question for our review: "Did the Trial Court err in granting the [Appellee]'s omnibus pretrial motion for writ of *habeas corpus* where the evidence, viewed in a light most favorable to the Commonwealth, established sufficient evidence for a *prima facie* case of [DUI]?" Commonwealth's Brief, at 6 (italics added).

Initially, we note that where the facts are not in dispute the determination of whether a *prima facie* case has been established is a question of law. **Commonwealth v. Finn**, 344 Pa.Super. 571, 496 A.2d 1254, 1255 (1985). Accordingly, our scope of review is limited to determining whether the trial court committed an error of law. **Id.** "The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury." **Commonwealth v. Martin**, 727 A.2d 1136, 1142 (Pa. Super. 1999), *appeal denied*, 560 Pa. 722, 745 A.2d 1220 (1999) (quoting **Commonwealth v. Allbeck**, 715 A.2d 1213, 1214 (Pa. Super. 1998)). "[T]he Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of

each and every element of the crime charged." ***Id.*** Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. ***Commonwealth v. Wojdak***, 502 Pa. 359, 369, 466 A.2d 991, 1000 (1983); …. "Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." ***Commonwealth v. Owen***, 397 Pa.Super. 507, 580 A.2d 412, 414 (1990) (citations omitted).

***Commonwealth v. Marti***, 779 A.2d 1177, 1180 (Pa. Super. 2001) (citation omitted).

The critical issue in this case is whether the Commonwealth established a *prima facie* case that Appellee was driving the vehicle when it crashed. The trial court determined that "[e]ven when … view[ed] … in the light most favorable to the Commonwealth, and considering all reasonable inferences in favor of the Commonwealth, the evidence produced [was] incapable of supporting a guilty verdict." TCO, at 9. In this regard, the trial court found that the evidence produced by the Commonwealth in this case could not "show that it is more likely than not that [Appellee] was the one driving." ***Id.***

The statutory language at issue is as follows:

**(a)  General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802.

While the Commonwealth is obligated to prove the 'operation' element of this offense, it is not mandatory to prove that element with direct testimony or direct evidence. Rather, as this Court discussed in **Commonwealth v. Johnson**, 833 A.2d 260 (Pa. Super. 2003), "it is clear that the Commonwealth may establish, by the totality of the circumstances, that a defendant was driving, operating or in actual physical control of a motor vehicle." **Id.** at 266. The **Johnson** Court summarized some of the many instances in which a DUI conviction was upheld against challenges that the defendants were not directly observed operating a vehicle:

> In [**Commonwealth v. Woodruff**, 668 A.2d 1158 (Pa. Super. 1995)], in the early hours of April 15, 1993, the police found [the] appellant in a slumped position and sleeping in his automobile along the side of Route 6 in Wyalusing Township, Pennsylvania. That location was fifty yards from a convenience store from where the appellant previously purchased alcoholic beverages. The appellant's vehicle was protruding over the fog lines into the lane of traffic. The engine of the automobile was running and its high beam lights were activated. The appellant, who was seated behind the steering wheel of the vehicle, smelled of alcohol and had many cans of beer in the vehicle. **Woodruff**, 668 A.2d at 1160. The police roused the appellant, and administered field sobriety tests which the appellant failed. Following his conviction of driving under the influence, on appeal, the appellant did not contest that he was under the influence of alcohol when he was arrested. Rather, he argued that the evidence was insufficient to establish that he was driving, operating or in actual physical control of the automobile. We rejected this argument and noted that "the suspect location of an automobile 'supports an inference that it was driven, ... a key factor in the finding of actual control.'" **Id.** at 1161. We also emphasized that for a DUI conviction, no observation was necessary that the defendant's car was in motion. **Id.**
>
> In **Commonwealth v. Bowser**, 425 Pa. Super. 24, 624 A.2d 125 (1993)[,] *appeal denied*, 537 Pa. 638, 644 A.2d 161

(1994), *cert. denied* 513 U.S. 867, 115 S.Ct. 186, 130 L.Ed.2d 120 (1994), the evidence established that the intoxicated Bowser was found clutching the steering wheel of a car that had been involved in a two-car accident and was stopped in the road. Shortly after the accident, an individual named David Waters arrived on the scene. He subsequently removed the driver of the other vehicle, Ms. Furlong from her burning automobile and placed her in the back of his truck. Mr. Waters then proceeded to Bowser's vehicle and eventually utilized force to remove Bowser from the vehicle. *See Bowser*, 624 A.2d at 129. When the police arrived, Mr. Waters informed them that Bowser was one of the drivers involved in the accident. Bowser was subsequently convicted of DUI. On appeal, our Court found this evidence sufficient to sustain Bowser's DUI conviction even though no one actually saw Bowser driving the vehicle. *See* [*i*]*d.* at 130.

In *Commonwealth v. Devereaux*, 304 Pa. Super. 327, 450 A.2d 704 (1982), two witnesses heard a crash and went to the scene to investigate. At the scene, one of the witnesses saw Devereaux in the passenger seat of a car that had been involved in a one-car accident. No one else was in the vicinity other than Devereaux and another man who was standing outside Devereaux's car attempting to render aid to Devereaux. Although no one actually saw Devereaux driving the car and no one saw him in the driver's seat or behind the steering wheel, this Court upheld Devereaux's DUI conviction based on the reasonable inference that Devereaux was driving or operating the vehicle at the time of the accident.

*Commonwealth v. Leib*, 403 Pa. Super. 223, 588 A.2d 922 (1991)[,] presents yet another example of a situation where this Court upheld a DUI conviction even though nobody actually saw the appellant drive the vehicle. In that case, the police found the appellant, unconscious and slumped over the steering wheel of his vehicle which was parked in the middle of the road. *Id.* at 924. Although the car was not running, the keys were in the ignition. After the police awakened the appellant, who smelled of alcohol and had glassy and bloodshot eyes, they subsequently administered field sobriety tests which the appellant failed. The appellant's blood alcohol content was later determined to be .263. *Id.* Following his DUI conviction, on appeal the appellant maintained that the evidence was insufficient to establish that he was driving, operating or in

actual physical control of the vehicle. He argued that his car broke down at the location where he was arrested and that he consumed alcohol after his car broke down. We rejected the appellant's argument, noting that the jury did not believe his version of the events.

*Johnson*, 833 A.2d at 265-66.

Then, in *Johnson*,

one of the cars involved in the accident (the Chevy Impala) was owned by [Johnson] and was registered in his name. The other car involved in the accident (the Pontiac) sustained rear-end damage while [Johnson]'s vehicle sustained front-end damage. When the police arrived, [Johnson]'s vehicle was located on a travel lane on a public street behind the other vehicle involved in the accident. This indicates that [Johnson]'s vehicle was driven to that location: the vehicle did not suddenly emerge from nowhere onto the travel lane of a public street. [Johnson] was leaning against the driver's side door of his vehicle when the police arrived. Thus, it can reasonably be inferred that [Johnson] drove his car to the accident scene: [Johnson] and his car did not suddenly emerge from nowhere onto the travel lane of a public street behind another car that had just been rear-ended. It can reasonably be inferred that [Johnson] must have driven his car to that location.

*Id.* at 263-64.

Instantly, the Commonwealth essentially asks that this court extend the *Johnson* ruling yet another step further,[1] based on the following circumstances:

(1) [Appellee] was the registered owner of the crashed truck; (2) [Appellee] was located in the immediate vicinity of the crashed truck inside of his home; (3) eyewitnesses directed Captain Sti[f]fler to [Appellee]'s home, indicating that the

---

[1] The Commonwealth does not state their argument in these express terms. However, the facts of this case do present another degree of separation from a DUI-related vehicle than were present in *Johnson*.

occupants, a male and female, left the truck following the crash and went inside [Appellee]'s home; (4) upon Captain Sti[f]fler's assessment of [Appellee], never once did [Appellee] deny being involved in a crash, and therefore did not need to be looked at medically for possible injury; and (5) [Appellee] had the keys to his crashed truck in his pocket.

Commonwealth's Brief, at 17.

Initially, we address the fourth circumstance cited by the Commonwealth. Here, the Commonwealth appears to suggest that Appellee's silence was evidence of his guilt, a foreign concept to our jurisprudence, and one which we decline to countenance without some citation to supporting authorities, which the Commonwealth fails to provide.[2] The Commonwealth does cleverly try construe this fact as saying something more than it does, *i.e.*, that by not admitting to being involved in the crash, Appellee was expressly denying that he was in one, or that the same was implied by Appellee's refusal of treatment.

However, no such admission or denial is to be found in the record. Instead, the record demonstrates that Appellee did not deny being involved in a crash. N.T., 1/14/15, at 11. He made no statements about driving the vehicle. *Id.* He did not refuse treatment; yet, although he did not request it, Appellee permitted Captain Stiffler to check him for injuries. *Id.* at 11-12. Despite the fact that Appellee's vehicle was found overturned and lying

---

[2] When directly asked about his role in the accident, Appellee twice told Trooper Weaver that "he was pleading the 5th." N.T., 5/28/14, at 5.

across both lanes of traffic, Captain Stiffler did not observe any injuries on Appellee. *Id.* at 8; 11-12.

In any event, even had Appellee denied that he was in the vehicle when it crashed, under no circumstances could such a fact be construed as favorable to the Commonwealth. It would be, if anything, evidence that Appellee had not been operating the vehicle. For the aforementioned reasons, we reject the Commonwealth's claim that Appellee's purported failure to deny being involved in an accident supports a *prima facie* case that Appellee was operating the vehicle.

We do agree with the Commonwealth that the remaining four circumstances tend to support a conclusion that Appellee was driving the vehicle when it crashed. And, congruent with our standard of review, we cannot evaluate the relative weight of these circumstances. Indeed, if these facts existed in a vacuum, we would be persuaded that **Johnson** compels reversal in this case. But **Johnson** does not compel reversal here, because these were not the only facts demonstrated by the Commonwealth's own evidence.

The Commonwealth overlooks and/or understates another critical circumstance present in this case, and the primary basis for the trial court's conclusion that the Commonwealth had failed to demonstrate a *prima facie* case that Appellee had been operating the vehicle. The Commonwealth's own evidence demonstrated that there was another potential operator of

Appellee's vehicle, a female, who fled before Captain Stiffler and Trooper Weaver arrived.

The trial court explained the importance of this fact to its decision to dismiss Appellee's DUI charges as follows:

> In [**Commonwealth v. Young**, 904 A.2d 947 (Pa. Super. 2006)], the Superior Court considered a combination of factors in determining whether there was sufficient evidence for a *prima facie* case where a witness observed a defendant standing near the driver's side of his vehicle after it crashed into a utility pole. The witness also provided a detailed description of the driver to a police officer who arrived within a minute of being dispatched. In addition to the observations and the description provided by the eye witness, the Commonwealth produced additional evidence which further supported that the defendant was the driver. Specifically, the vehicle was registered in [the] defendant's name, car keys were found in his pocket, a witness observed him running away from the scene, and he attempted to evade police by running into a wooded area. [**Id.**] at 951. The Superior Court found this combination of factors sufficient to establish a *prima facie* case that the defendant was driving the vehicle. **Id. But see Com**[**monwealth**] **v. Prado**, 393 A.2d 8 (Pa. 1978) (finding [the] Commonwealth failed to establish a *prima facie* case where Appellee emerged from an alley after the shooting, but no witnesses to the shooting were presented and no evidence of the murder weapon was presented).
>
> Here[,] the Commonwealth failed to provide sufficient evidence that would permit a conclusion similar to **Young** or **Johnson**. Namely, neither Mr. Stiffler nor Trooper Weaver observed an operator present at the scene. Trooper Weaver testified that [Appellee] never admitted to driving and never said who was driving. Witnesses informed Mr. Stiffler that there were actually two different individuals who went into a nearby house following the crash. But unlike the scenario in **Young**, the witnesses in this case did not identify which occupant was driving the vehicle nor did they provide a physical description or identify the two individuals in any capacity. According to Mr. Stiffler, witnesses informed him that the occupants "are up at the house," but the witnesses did not provide a description beyond the fact that the occupants were male and female.

- 10 -

When Mr. Stiffler arrived at the house, he found [Appellee] who "denied there was a female with him, and that's when the elderly woman came out of the other room and said that she had left the house." It could be reasonably inferred that [Appellee] was protecting the female because perhaps she was the driver having fled the scene in six or seven inches of snow through the woods. Mr. Stiffler noted that he observed only one set of tracks in the snow, and the tracks led out to Eldersville Road, which is consistent with the information that Mr. Stiffler received from the elderly woman regarding a female fleeing the house.

Notably, this Court had a serious issue with the fact that the female occupant who was observed by witnesses fled the scene altogether, and the Commonwealth did not investigate this matter further. Such an act casts serious doubt as to whether [Appellee] was the driver. Additionally, [Appellee]'s attorney noted that car owners have multiple sets of car keys, and the fact that [Appellee] had the car keys in his pocket does not automatically mean that he was driving the vehicle, or in the vehicle, at the time that it crashed. In fact, Mr. Stiffler testified that he did not notice any scratches, bumps, or bruises on [Appellee], and he agreed that there was no evidence whatsoever that [Appellee] was in a rollover crash. The Commonwealth did not uncover or present any physical evidence from the scene of the crash that would support their contention that [Appellee] was the driver.

Accordingly, the Court finds that the Commonwealth did not present sufficient evidence to establish a *prima facie* case against [Appellee] under 75 Pa.C.S.A. § 3802(a)(1). Even when viewing the evidence in the light most favorable to the Commonwealth, and considering all reasonable inferences in favor of the Commonwealth, the evidence produced is incapable of supporting a guilty verdict. The Court notes that the Commonwealth need not establish every element beyond reasonable doubt; however, the evidence is insufficient to show that it is more likely than not that [Appellee] was the one driving. The Court properly granted [Appellee]'s Pre-trial Motion because the Commonwealth failed to establish a *prima facie* case.

TCO, at 7-9.

We ascertain no abuse of discretion in the trial court's analysis and conclusion. At best, after affording the Commonwealth the benefit of all reasonable inferences, the evidence established a *prima facie* case that Appellee was in the vehicle at the time of the crash. Placing Appellee in the driver's seat, however, was a hurdle that no factfinder could accomplish under a beyond-a-reasonable-doubt standard. Thus, the trial court correctly decided that a jury, while permitted to weigh all the evidence in the Commonwealth's favor, was not permitted to guess the identity of a perpetrator of a crime by the functional equivalent of a coin-flip.

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2016