[J-69-2023] [MO: Wecht, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| THOMAS E. BOLD, JR., | : | No. 36 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated |
| | : | November 21, 2022 at No. 784 CD |
| v. | : | 2020 Reversing the Order of the |
| | : | Cumberland County Court of |
| | : | Common Pleas, Civil Division, dated |
| COMMONWEALTH OF PENNSYLVANIA, | : | July 10, 2020 at No. 2020-02043 |
| DEPARTMENT OF TRANSPORTATION, | : | Civil Term. |
| BUREAU OF DRIVER LICENSING, | : | |
| | : | ARGUED:  November 29, 2023 |
| Appellee | : | |

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                              **DECIDED:  August 20, 2024**

I agree with the majority that the three triggering words in the operative statutes — "drive," "operate," and "actual physical control of the movement of a vehicle" — all require a finding the vehicle moved while the motorist was impaired.  In the absence of evidence to support such a finding here, appellant is entitled to relief.  To the extent the majority reads these separate terms as interchangeable, however, I respectfully disagree.  *See, e.g.*, Majority Opinion at 15 (concluding there is an "inescapable overlap of the terminology" since "'[o]perate' has a plain meaning that all but necessarily enfolds the other two terms").  Viewing them this way, I believe, ignores the presumption that the General Assembly did not intend superfluity when it amended these statutes.  *See* 1 Pa.C.S. §1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

The triggers contained in the current versions of Sections 1547 and 3802 of the Vehicle Code are the product of a series of amendments. The original driving under the influence (DUI) statute prohibited "operating" a vehicle while intoxicated. *See* 75 P.S. §1037 (repealed 1976); Act of Apr. 29, 1959, P.L. 58, §1037 ("It shall be unlawful for any person to **operate** a **motor vehicle**, tractor, streetcar or trackless trolley omnibus, while under the influence of intoxicating liquor or any narcotic drug or habit producing drug[.]") (emphasis added). The General Assembly later amended the DUI statute to proscribe "driving" under the influence. *See* 75 Pa.C.S. §3731 (repealed 2003); Drunk Driving Act, 1976 P.L. 162, No. 81, §1 (prohibiting "**driv[ing] any vehicle** while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving") (emphasis added). The legislature again amended the statute in 1982, this time prohibiting motorists from driving, operating, or being in actual physical control of the movement of a vehicle while under the influence. *See* 75 Pa.C.S. §3731(a)(1) (repealed 2003); Act of Dec. 15, 1982, P.L. 1268, No. 289 §9. The Vehicle Code at the time defined "vehicle" in the same broad strokes it uses today, incorporating "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks." 75 Pa.C.S. §102 (1981 version).

Similarly, the implied consent statute following a 1976 amendment established that "[a]ny person who **operates** a motor vehicle or tractor in this Commonwealth" impliedly consents to a chemical test, provided the police officer has "reasonable grounds to believe the person to have been **driving** while under the influence of intoxicating liquor." *See* 75 Pa.C.S. §1547(a) (emphasis added); Drunk Driving Act, 1976 P.L. 162, No. 81. The General Assembly expanded the provision to apply to "[a]ny person who **drives, operates or is in actual physical control** of the movement of a motor vehicle" so long as a "police officer has reasonable grounds to believe the person to have been **driving,**

**operating or in actual physical control of the movement** of a motor vehicle . . . while under the influence[.]" 75 Pa.C.S. §1547(a) (emphasis added); Act of Dec. 15, 1982, P.L. 1268, No. 289.

Because each amendment changed or added new trigger words, I believe reading them as interchangeable renders the changes superfluous, which we may not do. *See Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 312 (Pa. 2018) (we "may not ignore the language of a statute, nor may we deem any language to be superfluous") (quotation omitted). The revisions make it "clear that the legislature intended to expressly broaden the scope of" the operative statutes. *Commonwealth v. Crum*, 523 A.2d 799, 801 (Pa. Super. 1987). And, again, we must endeavor to "ascertain and effectuate the intention of the General Assembly" by construing every statute "if possible, to give effect to all its provisions." 1 Pa.C.S. §1921(a). I therefore favor an interpretation that differentiates these terms.

Like the majority, I am somewhat "confound[ed]" by the similarities between the common parlance of the terms and their conflation throughout the Vehicle Code. Majority Opinion at 14. This is especially so given the legislature's repeated use of "operate" when ordinary understanding suggests "drive" would be more appropriate. *See, e.g.*, 75 Pa.C.S. §102 (defining a "[l]earner's permit" as one "issued for the purpose of learning to operate a motor vehicle" and a "[c]ertified driving instructor" as one certified "to teach the safe operation of motor vehicles"). Further compounding the confusion is the Vehicle Code's loose use of these terms to define one another. As the majority observes, the Vehicle Code defines a "driver" as "[a] person who drives or is in actual physical control of a vehicle[.]" Majority Opinion at 12 n.48, *quoting* 75 Pa.C.S. §102.

But I do not think it is impossible to afford each of these terms a distinct meaning. I view the General Assembly's 1982 amendments to the DUI and implied consent statutes

as an attempt to encompass all forms of drunk driving, be it through the traditional method of moving the vehicle (*i.e.,* "driving"); "operating" non-traditional vehicles like bicycles or farm equipment; or being discovered while stationary after driving (*i.e.*, being in "actual physical control"). Although the three triggering terms may refer to different circumstances, they all serve the legislature's apparent purpose underlying Sections 1547 and 3802: to punish and deter individuals who endanger public safety by moving a vehicle on public thoroughfares while impaired.

The majority correctly points out that, until 2003, the Vehicle Code cabined Section 1547 to those who drove, operated, or were in actual physical control of a "**motor** vehicle." *See id.*; *accord* Act of Sept. 30, 2003, P.L. 120, No. 24, §9.1. A "motor vehicle" is statutorily defined as "[a] vehicle which is self-propelled except an electric personal assistive mobility device or a vehicle which is propelled solely by human power." 75 Pa.C.S. §102. The majority considers it "implausible that the legislature added 'operating' in 1982 with the intention to encompass bicycles and other non-motorized vehicles[.]" Majority Opinion at 12 n.48. But, in my view, bicycles and other non-motorized vehicles are not necessarily excluded from the purview of the word "operating." The DUI statute as effectuated by the 1982 amendment broadly prohibited a person from driving, operating, or being in actual physical control of the movement of **any** "vehicle," which includes non-motorized vehicles like bicycles and non-traditional vehicles like husbandry equipment. 75 Pa.C.S. §3731(a)(1) (repealed 2003); *Commonwealth v. Labiaux,* 434 A.2d 194, 195 (Pa. Super. 1981); *see also* 75 Pa.C.S. §102 (1981 version) (defining "vehicle" as "[e]very device upon or by which any person or property is or may be transported or drawn upon a highway"). Given the legislature's use of the broad term "vehicle" in Section 3802, we might ask whether "operate" in Section 1547 is also meant to apply to "any" vehicle. *See* Majority Opinion at 6 n.23, *citing* 1 Pa.C.S. §1932

(explaining we read Sections 1547 and 3802 *in pari materia* to construe their shared terminology to "carry one stable meaning").

The Vehicle Code consistently uses "operate" to refer to the movement of non-traditional vehicles. For example, the definitions for covered farm vehicles, implements of husbandry, multipurpose agricultural vehicles, mobile homes, and streetcars all characterize these vehicles as "operating" on highways or rails. *See* 75 Pa.C.S. §102. This aligns with our common understanding of the word "operate," which dictionaries define as the "use" of a "device." *See Operate* (10), DICTIONARY.COM, https://www.dictionary.com/browse/operate (last visited Mar. 14, 2024) ("to manage or use (a machine, device, etc.)"); *Operate*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/operate (last visited Mar. 14, 2024) ("to (cause to) work, be in action or have an effect"). The term "operate," then, according to its ordinary usage and as applied throughout the Vehicle Code, clearly includes the use of non-traditional vehicles.

Although "operating" in this sense does not automatically mean "driving," I find our relevant case law still seems to require some evidence of movement to establish "operation." The Superior Court interpreted the 1959 version of the DUI statute — which prohibited only "operating" vehicles while intoxicated — as requiring actual physical control of the movement of the vehicle. *See, e.g.*, *Commonwealth v. Kallus*, 243 A.2d 483, 485 (Pa. Super. 1968); *Commonwealth v. Kloch,* 327 A.2d 375, 383 (Pa. Super. 1974).[1] The court determined operation (as understood through the lens of "actual physical control") did not require evidence of movement, but it emphasized the location

---

[1] These cases demonstrate the longstanding conflation of the two triggering provisions we now endeavor to separate. The court attempted to resolve whether motorists had operated their vehicles while impaired in violation of the 1959 version of the DUI statute and, in so doing, it defined "operate" as having "actual physical control."

of the vehicle was a significant factor in the analysis, explaining responding officers "could reasonably infer that [the motorist] had **driven** to the spot where they found his car" and "that the car was where it was and was performing as it was because of [the motorist's] choice[.]" *Kloch,* 327 A.2d at 384 (emphasis added). This double-speak of explicitly rejecting a movement requirement while also relying on evidence of movement to support a finding of DUI follows the trend identified by the majority: although some appellate panels suggested past or present movement is unnecessary for a violation, most decisions hinge on movement. *See* Majority Opinion at 19 ("Time and again, those cases have involved cars in gear, feet on pedals, drivers slumped over the wheel, cars located partially or wholly in the driving lanes of active roadways — all circumstances strongly suggestive of a vehicle that recently has moved."). In any event, early cases nominally dismissing a movement requirement came well before *Banner* expressly rejected the notion a motorist violates the DUI statute, and impliedly consents to chemical testing, by merely being present in a stationary vehicle. *See Banner v. PennDOT*, 737 A.2d 1203, 1208 (Pa. 1999) ("A line must be drawn to distinguish circumstances where a motorist is driving his vehicle while under the influence of alcohol, which the statute is intended to prevent, and circumstances where a motorist is physically present in a motor vehicle after becoming intoxicated."); *see also Commonwealth v. Price*, 610 A.2d 488, 491 (Pa. Super. 1992) ("The legislature . . . did not intend to make it a crime to merely sit in a car while intoxicated.").

Similarly, a finding that a driver was in actual physical control of the **movement** of a vehicle requires some suggestion of movement — although the officer need not observe movement to have the reasonable belief it occurred at some relevant time. "Actual physical control" is plainly the "[d]irect bodily power over something, esp[ecially] a vehicle." *Actual Physical Control*, BLACK'S LAW DICTIONARY (11th ed. 2019). The DUI

statute thus requires that the individual had direct bodily power over the vehicle's movement. Some courts, including the Commonwealth Court below, have assumed a driver has power over a vehicle's movement without evidence of movement. *See, e.g.*, *Vinansky v. PennDOT*, 665 A.2d 860, 862 (Pa. Cmwlth. 1995) ("The arresting officer is not required to demonstrate probable cause to believe the motorist was actually **driving** under the influence of alcohol, only that the vehicle was under his or her control.") (emphasis in original); *Gammer v. PennDOT*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010) ("Generally, the motorist's presence in the driver's seat of the vehicle with the engine on has been deemed sufficient to satisfy the reasonable grounds test."). This reasoning aligns with the Superior Court's early conclusion that "actual physical control of the movements" of a vehicle includes the **prevention** of movement. *See Kloch,* 327 A.2d at 383 ("Preventing a car from moving is as much control and dominion as actually putting the car in motion on the highway. Could one exercise any more regulation over a thing, while bodily present, than prevention of movement or curbing movement[?]") (quotation and citation omitted). But this interpretation does not survive *Banner.*

Regarding this point, I find the plurality opinion in *Commonwealth v. Wolen*, 685 A.2d 1384 (Pa. 1996) (opinion announcing judgment of court), particularly instructive. The *Wolen* plurality considered that "nowhere in the [DUI] statute is there a requirement that the fact-finder should consider whether or not one in actual physical control of a vehicle and under the influence of alcohol or controlled substances poses a threat to public safety." *Wolen*, 685 A.2d at 1386 n.4. Instead, continued the plurality, "[t]he legislature has reasonably determined" driving while impaired "constitutes a threat to public safety *per se,* even if there are no other members of the public immediately endangered. While it may be laudable that one who realizes that he is incapable of safe driving **pulls over** to 'sleep it off,' the legislature has made no exception to the reach of

the statute to such individuals. Accordingly, such a person's threat to public safety is not a relevant consideration under the drunk driving statutes." *Id.* (emphasis added). Under this theory, a driver's control over the vehicle does not dissipate when he ceases the illegal activity of driving drunk. The *Wolen* plurality recognized that consideration of the "totality of the circumstances" necessarily includes "other evidence indicating that the defendant **had driven** the vehicle[.]" *Id.* at 1385 (emphasis added) (totality of circumstances includes location of vehicle, whether engine was running, and "whether there was other evidence indicating that the defendant had driven the vehicle at some point prior to the arrival of police on the scene"). The focus was on whether the motorist **already** endangered the public safety rather than whether the motorist **may** pose a **future** threat by being positioned such that they could move the car at any time. There is a world of difference between a motorist who pulls over to "sleep it off" after realizing **while driving** that he is too impaired to drive, and a motorist who recognizes his condition **before** starting to drive, and chooses instead to "sleep it off." The former has engaged in the precise conduct the legislature sought to deter; the latter has not. The *Banner* Court subsequently reiterated that the reasonable grounds test requires "some objective evidence that the motorist **exercised** control over the movement of the vehicle at the time he was intoxicated." *Banner*, 737 A.2d at 1207. The use of the past tense clarifies our analysis should be focused on whether the motorist **already** moved the car.

As such, I find the phrase "actual physical control of the movement of the vehicle" can describe "intoxicated drivers who were on the road and were a threat to public safety, but were not actually moving when the police found them." *Commonwealth v. Byers*, 650 A.2d 468, 471 (Pa. Super. 1994).[2] Thus, under this analysis, like the majority's, a motorist

---

[2] "Actual physical control" might also extend to situations where the motorist attempted to drive the vehicle but was prevented by external circumstances. *See, e.g.*, *Commonwealth v. James*, 863 A.2d 1179, 1184 (Pa. Super. 2004) (finding motorist who (continued…)

discovered in a stationary vehicle may be found in violation if there is evidence he moved the vehicle to its current location while impaired. *See, e.g.*, *Commonwealth v. Woodruff*, 668 A.2d 1158, 1160-62 (Pa. Super. 1995) (finding motorist in actual physical control after discovered "semi-slumped" over wheel of running vehicle parked partially on the street and partially on the paved berm along the side of the highway); *Commonwealth v. Wilson*, 660 A.2d 105, 107 (Pa. Super. 1995) (finding motorist in actual physical control after discovered slumped over wheel of vehicle located on the road's embankment, approximately one hundred yards from the side of the road); *Commonwealth v. Trial*, 652 A.2d 338, 339-40 (Pa. Super. 1994) (finding motorist in actual physical control after discovered asleep behind wheel with keys in the ignition, parked diagonally across roadway blocking traffic); *PennDOT v. Paige*, 628 A.2d 917, 919-20 (Pa. Cmwlth. 1993) (finding police officer had reasonable grounds to believe motorist was in actual physical control after discovered asleep behind wheel with keys in the ignition and car parked on city street); *Commonwealth v. Leib*, 588 A.2d 922, 925-26 (Pa. Super. 1991) (finding motorist in actual physical control after discovered asleep behind wheel with keys in the ignition and car parked in the middle of the road).

Interpreting the three triggering provisions as having distinct applications conforms to the presumption the General Assembly intended for all its words to have effect, while still abiding by the policy considerations laid out in *Banner* and aptly elucidated in today's majority opinion. Of course, I recognize ascribing separate meaning to each of these terms may present a distinction without a difference in the resolution of most cases.

---

tried to drive his vehicle off a tow truck, but was only able to "move[ ] it halfway off the [ ] lift" because it was strapped down, was nonetheless in actual physical control); *Commonwealth v. Taylor*, 352 A.2d 137, 139-40 (Pa. Super. 1975) (finding motorist in actual physical control even though vehicle was disabled and immobilized after a collision); *Kallus*, 243 A.2d at 485 (finding motorist in actual physical control of a vehicle after he was discovered with the car in gear and foot on the pedal, though the vehicle was embedded in a snowbank).

Notably, whether the three terms overlap, as the majority concludes, or can be afforded discrete meaning, as I determine, the critical fact remains: all three terms require "suspicion of prior actual motion before chemical testing may be demanded[.]" Majority Opinion at 19-20. In other words, for PennDOT to succeed in establishing a violation of 75 Pa.C.S. §1547 — regardless of whether it proceeds on a theory that the individual "drove," "operated," or was in "actual physical control of the movement of a vehicle" — it still must produce evidence demonstrating the officer had reasonable grounds to believe the individual engaged in prior actual motion. *See* Majority Opinion at 24 ("The Vehicle Code's provisions pertaining to DUI aim to deter one hazardous behavior that imperils public safety and one only: **driving** under the influence.") (emphasis in original). As no such evidence was presented here, PennDOT did not prove Bold had operated or been in actual physical control of the movement of his vehicle as required by the statute. Accordingly, I join the majority's decision reversing the Commonwealth Court's contrary order, although I reach that result for slightly different reasons than the majority.