[No. 52272-3.  En Banc.  August 21, 1986.]

THE CITY OF BREMERTON, *Respondent*, v. JACK CORBETT, *Petitioner*.

THE CITY OF BREMERTON, *Respondent*, v. MARY A. CARR, *Petitioner*.

THE CITY OF BREMERTON, *Respondent*, v. KIM DUANE LEBEDA, *Petitioner*.

THE CITY OF BREMERTON, *Respondent*, v. SHERRIE G. BURKHART, *Petitioner*.

*Roof, Tolman & Kirk,* by *Jeffrey L. Tolman,* for petitioner Corbett.

*Crawford, McGilliard, Peterson & Yelish,* by *Michael E. Klemetsrud,* for petitioners Carr, et al.

*William Broughton, City Attorney,* and *Mary B. Killian, Assistant,* for respondent.

BRACHTENBACH, J.—The City of Bremerton charged the petitioners, Mary A. Carr, Kim Duane Lebeda, and Sherrie G. Burkhart, with driving while intoxicated. RCW 46.61-.502. Jack Corbett was charged with being in actual physical control of a vehicle while intoxicated. RCW 46.61.504. The charges arose from separate incidents.

The municipal court dismissed each charge. Relying upon *State v. Hamrick,* 19 Wn. App. 417, 576 P.2d 912 (1978), the court held that the City had not proved the corpus delicti thereby precluding the admission of any confession or admission. The Superior Court affirmed. The Court of Appeals reversed, thereby reinstating the charges. *Bremerton v. Corbett,* 42 Wn. App. 45, 708 P.2d 408 (1985). We affirm the Court of Appeals, but on slightly different grounds.

The facts of each case—assuming as we must the truth of the City's evidence and all reasonable inferences therefrom in a light most favorable to the City—may be summarized as follows:

## Bremerton v. Carr

In the early morning hours of February 26, 1983, a Ford Pinto registered to Mary Carr was struck by a vehicle driven by Susan Sheldon. When Officer Scott arrived a few minutes later, Carr was standing between the two cars. Ms. Sheldon remained in her vehicle. There were two other persons in the Pinto. When the officer asked who had been driving the cars, Carr walked up to him, license in hand, and said, "I'm the driver of the Pinto." The officer noticed that Carr seemed intoxicated so he put her in his patrol car. The officer later asked the person seated in the front passenger side of the Pinto to move the car. She was unable to start the Pinto after several attempts. The Pinto had a manual transmission and she apparently tried to start the car without depressing the clutch pedal or putting it in neutral. The officer had no trouble starting and moving the car.

## Bremerton v. Burkhart

At about 11:30 p.m. on March 27, 1983, a car towing a small trailer failed to negotiate a corner and went over an embankment. Moments after hearing the noise of the accident, a witness observed a bystander helping a woman with a small child out of the passenger side of the car and up the embankment to the street. The bystander returned to the car and helped another woman up the embankment.

When Officer Johnson arrived at the scene of the accident shortly thereafter, there was no one near the car. He determined that Sherrie Burkhart was the registered owner of the car. Burkhart was contacted at her residence and brought back to the accident scene, where she then admitted that she had been driving the car at the time of the accident.

Earlier in the evening Burkhart had dropped off her boyfriend, Mark Sarber, at their residence and had driven off with their small child and Sarber's sister, who had only been in Bremerton for a week and was relatively unfamiliar with the city. Burkhart returned to the house later that evening on foot carrying their child. She was crying and told Sarber that she had been in a wreck. The accident had occurred two blocks from the house.

## Bremerton v. Lebeda

On April 24, 1982, Officer Carver was dispatched to investigate a 2-car collision. Both of the vehicles, a GMC pickup truck and a Mercury, were extensively damaged in the left front area.

Although neither vehicle was occupied when he arrived, Officer Carver contacted three people who were near the scene of the accident: Kim Lebeda, Jack Harper and a Mr. Parker. Lebeda and Parker were assisting Harper, who was bleeding profusely from head injuries. On three occasions, Harper tried to walk toward the Mercury, which had a shattered windshield and a bloodstained driver's compartment, including some hair and blood on the windshield. The pickup truck was registered to Lebeda, who lived a few

blocks from the accident site. Officer Carver observed that Lebeda had freshly bruised and scraped knees and that his eyes were red and his speech was slurred. Lebeda admitted that he had been driving the pickup. Parker, who was uninjured and said he was just walking by, was questioned and allowed to leave.

## Bremerton v. Corbett

At approximately 11 p.m. on the evening of March 17, 1983, Officer Long noticed a car stopped at an intersection in the inside lane of a busy city street. Jack Corbett was looking under the hood. The officer then saw Corbett get into the driver's seat. Officer Long approached the vehicle. Although he did not see any keys in the ignition, he noticed that the ignition switch was on. The keys were found on the car floor near the driver's seat. No other person was near the car. The officer observed that Corbett appeared intoxicated. Corbett admitted that he had been driving the car.

In each of these cases, which were consolidated on appeal, the City sought to introduce petitioners' admissions of driving into evidence. However, the municipal court, in dismissing the charge in each case, held that the City had presented insufficient evidence of the corpus delicti independent of petitioners' statements, thus precluding their admission into evidence. The Court of Appeals reversed. It held that corroborating independent evidence of the corpus delicti is required "only for admissions elicited by police questioning in circumstances requiring *Miranda* warnings." *Bremerton v. Corbett, supra* at 51. Consequently, the court concluded that the City had in each case presented sufficient evidence of corpus delicti.

We affirm. Although we agree with petitioners that the Court of Appeals erred in holding that only confessions or admissions elicited in a *Miranda* setting need be corroborated, we conclude that the City adduced sufficient prima facie evidence of the corpus delicti independent of petitioners' admissions.

Corpus delicti usually consists of two elements: (1) an

injury or loss (*e.g.,* death or missing property) and (2) someone's criminal act as the cause thereof. To sustain a conviction, there also must be proof that the defendant was the actor. *State v. Meyer,* 37 Wn.2d 759, 763, 226 P.2d 204 (1951). Proof of the identity of the person who committed the crime is not part of the corpus delicti, which only requires proof that a crime was committed by someone.

■ However, *State v. Hamrick, supra,* recognized that proof of the corpus delicti in a case charging driving or being in physical control of a vehicle while intoxicated differs from many crimes where identity is not an element of the corpus delicti. *Hamrick,* at 419. Proof that a car ran off the road, caused an accident or stopped in a traveling lane does not establish that an element of the offense was committed. Likewise, proof that someone was intoxicated does not prove that that person drove or was in control of the car. Inherent in the offense is the requirement that the intoxicated person was the driver or was in control. The corpus delicti cannot be proved without proving someone's criminal agency which in turn requires identification of a particular individual who is under the influence. Thus, as in *Hamrick,* the corpus delicti of the offenses charged here cannot be established absent proof connecting the petitioners with operation or control of a vehicle while intoxicated.

Petitioners contend that the City failed to introduce sufficient evidence of the corpus delicti independent of their admissions of driving. This argument involves application of the so–called "corpus delicti rule."

An oft–cited and traditional statement of this rule, as adopted in Washington, is found in *State v. Meyer, supra:*

> The confession of a person charged with the commission of a crime is not sufficient to establish the *corpus delicti,* but if there is independent proof thereof, such confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession.
>
> The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof.

It is sufficient if it *prima facie* establishes the *corpus delicti.*

(Citations omitted.) *Meyer,* at 763–64. This requirement of independent proof of the corpus delicti is equally applicable to a defendant's extrajudicial confessions and admissions.[1] *See State v. Hamrick,* 19 Wn. App. 417, 419, 576 P.2d 912 (1978).

Here the City sought to rely upon petitioners' admissions of driving to establish the corpus delicti of the offenses of driving or being in physical control of a vehicle while intoxicated. It was thus incumbent upon the City to introduce prima facie evidence of the corpus delicti independent of petitioners' admissions.

In applying the corpus delicti rule, however, the Court of Appeals initially held that not all admissions need be corroborated; corroboration is required only for those statements elicited by police questioning in circumstances requiring *Miranda* warnings—*i.e.,* in a custodial police interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Consequently, the Court of Appeals considered the admissions of petitioners Carr and Burkhart in determining whether there was prima facie evidence of the corpus delicti. Petitioners contend that this was error. We agree.

The Court of Appeals reasoned that since the purpose of the corpus delicti rule is to protect against potential police abuses, it follows that only admissions elicited in a custodial police interrogation require corroboration. This limitation of the scope of the corpus delicti rule is without precedent or authority. Nor is it consistent with the historical justification for the rule.

The rule requiring independent corroboration of extrajudicial confessions and admissions is one of the oldest confession doctrines. *See generally* 7 J. Wigmore, *Evidence* §§

---

[1] In these cases we need not distinguish between an admission and a confession. For the difference *see, e.g., State v. Karumai,* 101 Utah 592, 126 P.2d 1047, 1052 (1942); *see generally* C. McCormick, *Evidence* § 144 (3d ed. 1984); *cf. State v. Jones,* 65 Wn.2d 449, 397 P.2d 815 (1964).

2070-71 (rev. 1978); Comment, *California's Corpus Delicti Rule: The Case for Review and Clarification,* 20 U.C.L.A. L. Rev. 1055, 1058-65 (1973). Unlike the principles enunciated in *Miranda v. Arizona, supra,* and the development of similar constitutional doctrines relating to the voluntariness of confessions, the corpus delicti rule does not have a constitutional source; it is traceable to English law and was early established in America. *E.g., People v. Hennessey,* 15 Wend. 147 (N.Y. 1836); *People v. Jones,* 31 Cal. 566 (1867); *State v. Marselle,* 43 Wash. 273, 86 P. 586 (1906). *See* 7 J. Wigmore, *supra;* Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession,* 103 U. Pa. L. Rev. 638 (1955).

The corpus delicti rule was established by the courts to protect a defendant from the possibility of an unjust conviction based upon a false confession alone. *See Smith v. United States,* 348 U.S. 147, 99 L. Ed. 192, 75 S. Ct. 194 (1954); 7 J. Wigmore, at §§ 2070-71. The requirement of independent proof of the corpus delicti before a confession is admissible was influenced somewhat by those widely reported cases in which the "victim" returned alive after his supposed murderer had been tried and convicted, and in some instances executed. *See, e.g., Perrys' Case,* 14 Howell's State Trials 1311 (1660); *Trial of Stephen and Jesse Boorn,* 6 American State Trials 73 (1819). *See generally State v. Howard,* 102 Or. 431, 203 P. 311 (1921); Note, 103 U. Pa. L. Rev. at 646-47. It arose from judicial distrust of confessions generally, coupled with recognition that juries are likely to accept confessions uncritically. *Developments in the Law—Confessions,* 79 Harv. L. Rev. 935, 1073 (1966); Note, 103 U. Pa. L. Rev. at 642-43. *See Smith v. United States, supra.* This distrust stems from the possibility that the confession may have been misreported or misconstrued, elicited by force or coercion, based upon mistaken perception of the facts or law, or falsely given by a mentally disturbed individual. Note, 103 U. Pa. L. Rev. at 642-46; Note, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule,* 46 Fordham L. Rev. 1205 (1978). Thus, it is clear that the corpus delicti

rule was established to prevent not only the possibility that a false confession was secured by means of police coercion or abuse but also the possibility that a confession, though voluntarily given, is false. *See Smith v. United States, supra* at 153; Note, *Criminal Law—Confessions—Admissibility of Corroborative Evidence,* 42 N.C. L. Rev. 219, 221 (1963).

 Given the justification for the corpus delicti rule, it makes no sense to limit its application, as did the Court of Appeals here, to admissions elicited in circumstances requiring *Miranda* warnings—*i.e.,* in a custodial police interrogation. The danger that an admission is false though voluntarily made is present both when it is made under custodial interrogation and when it is not. Consequently, there is no discernible basis for requiring corroboration of one and not the other. If the only justification for retention of the corpus delicti rule is to protect defendants against coerced or involuntary confessions, then the Court of Appeals test as to when an admission must be corroborated is perhaps defensible. *Cf. Miranda v. Arizona, supra* (custodial interrogation implicates Fifth Amendment privilege against self–incrimination). However, such is not the case. Thus petitioners' admissions, whether made in a *Miranda* setting or not, require corroboration under the corpus delicti rule.

In so holding, we are not unmindful of the criticism that the corpus delicti rule has drawn from courts and legal commentators. *See, e.g.,* 7 J. Wigmore, *supra;* C. McCormick, *Evidence* § 145 (3d ed. 1984); Note, 46 Fordham L. Rev. 1205; 79 Harv. L. Rev. at 938; Comment, 20 U.C.L.A. L. Rev. 1055. It has been suggested that the rule may have "outlived its usefulness" in light of the development of other safeguards that protect against unreliable confessions. C. McCormick, *supra* at 370–71. Others have questioned the extent to which the corpus delicti rule continues to serve its original purposes. *See, e.g.,* Note, 46 Fordham L. Rev. at 1216. Although the vast majority of jurisdictions, including Washington, still adhere to the rule requiring

independent evidence of the corpus delicti, *see* Annot., *Corroboration of Extrajudicial Confession or Admission,* 45 A.L.R.2d 1316 (1956) (and cases collected therein), the federal courts and a growing number of state courts have opted for a more flexible rule for corroborating confessions than the rigid rule requiring independent proof of all elements of the corpus delicti; under this rule, the corroborative evidence need only tend to establish the trustworthiness of the confession. *See, e.g., Opper v. United States,* 348 U.S. 84, 99 L. Ed. 101, 75 S. Ct. 158 (1954); *State v. Parker,* 315 N.C. 222, 337 S.E.2d 487 (1985); *State v. Yoshida,* 44 Hawaii 352, 354 P.2d 986 (1960); *State v. George,* 109 N.H. 531, 257 A.2d 19 (1969).

The City asks this court to reexamine our adherence to the corpus delicti rule. However, we decline to do so. Because of the inadequate briefing on this issue and our ultimate disposition of this case, reexamination of the corpus delicti rule is best left for another day and more compelling facts.

We turn now to the basic issue in this case: Did the City present sufficient evidence of the corpus delicti independent of petitioners' admissions?

■ As noted above, the independent proof is sufficient if it prima facie establishes the corpus delicti, which in this case is met by proof that petitioners were driving or in actual physical control of a vehicle while intoxicated.[2] The independent evidence need not be sufficient to support a conviction or even to send the case to the jury. *State v. Fellers,* 37 Wn. App. 613, 615, 683 P.2d 209 (1984); *State v. Fagundes,* 26 Wn. App. 477, 484, 614 P.2d 198, 625 P.2d 179, *review denied,* 94 Wn.2d 1014 (1980). Nor is it necessary that the evidence exclude every reasonable hypothesis consistent with petitioners not driving a car. "Prima facie", in this context, means only that there be evidence of suffi-

---

[2]The question of petitioners' intoxication is not before us on appeal. Thus, for purposes of review, we will assume that the City introduced sufficient evidence of this element of the corpus delicti.

cient circumstances which would support a logical and reasonable inference that petitioners were driving or in actual physical control of a vehicle. *State v. Hamrick, supra* at 419; *State v. DePriest,* 16 Wn. App. 824, 560 P.2d 1152 (1977). We conclude, as a matter of law, that the City met its burden in establishing prima facie evidence of the corpus delicti in each of the cases here.

Our holding is consistent with *State v. Hamrick, supra.* In that case, there was no independent evidence connecting defendant with control of a vehicle other than his presence at the scene of the 2–vehicle accident. Thus, the Court of Appeals correctly held that the State had failed to sufficiently establish the corpus delicti. In each of the cases here, however, not only were the petitioners (except Burkhart) at the scene when the police arrived, they were also the registered owners of a vehicle there. While this evidence alone may not be sufficient, especially when there are other persons present, in each of the cases here there was additional circumstantial evidence connecting petitioners with control of their vehicles.

Petitioner Carr was standing near the Pinto registered to her when the police arrived at the scene of the accident. Another person was in the front passenger seat. This person was unable to start the car several times when requested to by the police, although the police officer had no trouble doing so. This evidence will support a reasonable inference that Carr was the driver of the Pinto.

In petitioner Burkhart's case, although there was no one at the scene of the single car accident when the investigating officers arrived, the evidence suggests that Burkhart and Sarber's sister were both in the car when it went over the embankment. In addition, the evidence will support an inference that Burkhart was the driver. She was the registered owner of the car, she was last seen driving the car earlier in the evening with Sarber's sister in the passenger seat, and Sarber's sister was unfamiliar with the area whereas Burkhart was not.

In petitioner Lebeda's case, the following evidence prima

facie establishes that he was the driver of the pickup: (1) The Mercury's cracked windshield and bloodstained passenger compartment are consistent with Harper's injuries and thus suggest that he drove the Mercury. (2) The only other vehicle involved in the accident was the pickup registered to Lebeda. (3) Lebeda's injuries are consistent with his involvement in an accident. (4) The only other person near the accident scene said that he was a passerby, had no apparent injuries, and showed no concern for either vehicle.

As for petitioner Corbett, there was sufficient prima facie evidence of his actual physical control of the vehicle to allow consideration of his admission. The car was stalled on the inside lane of a busy city street. Corbett was sitting in the driver's seat. He was the registered owner and no one else was near the car. The car keys were on the floor below him and the ignition was on. Although the car may have been inoperable, the evidence permits a legitimate inference that Corbett drove the vehicle until it stalled and was still in physical control of it when the police arrived on the scene. *See State v. Smelter*, 36 Wn. App. 439, 674 P.2d 690 (1984). *See also Commonwealth v. Taylor*, 237 Pa. Super. 212, 352 A.2d 137 (1975); *State v. Ghylin*, 250 N.W.2d 252 (N.D. 1977).

We thus affirm the Court of Appeals decision insofar as it held that there was sufficient prima facie evidence of the corpus delicti in each of the cases here so as to warrant consideration of petitioners' admissions. Accordingly, the orders dismissing the charges against petitioners are reversed and the cases remanded to the district court.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

DURHAM, J. (concurring)—I would have preferred to reconsider the corpus delicti rule. Nonetheless, I concur in the result reached by the majority.