# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75019-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DENNIS JAMES CLAY, | ) | |
| AKA DENNIS JAMES BLOWERS, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 25, 2017 |

TRICKEY, A.C.J. — Dennis Clay appeals his convictions of attempting to elude a pursuing police vehicle and hit and run of an attended vehicle. Clay argues that the State did not present sufficient evidence to prove the essential element of both offenses that he was the driver of the car. He also argues that his statements to sheriff's deputies were improperly admitted because the State produced insufficient corroborating evidence. Because a rational trier of fact could have found that Clay was the driver of the car beyond a reasonable doubt when taking the State's evidence at trial as true and the State produced sufficient corroborating evidence to establish the corpus delicti of the charged offenses, we affirm.

## FACTS

On March 30, 2015, Deputy Jeremy Dallon and Deputy Gerald Meyer of the King County Sheriff's Office were working uniformed patrol in a marked police vehicle. While driving south on Aurora Avenue in Seattle, Washington, the

deputies encountered a white Cadillac with expired license plate tabs. The deputies initiated a traffic stop by engaging the police vehicle's lights, and attempted to pull the Cadillac over. The Cadillac made a legal U-turn at 150th Street and drove northbound on Aurora Avenue. The Cadillac accelerated away from the police vehicle at speeds of up to 60 m.p.h. and swerved around other vehicles. Deputy Meyer activated the vehicle's siren and radioed to dispatch that there were three males in the Cadillac. The deputies ended their pursuit by reducing their speed and turning off the lights and siren, as the deputies could not pursue a vehicle for a traffic infraction pursuant to King County Sheriff's Office policy.

At the intersection of 175th Street and Aurora Avenue, the deputies encountered an accident scene involving the same Cadillac and an Audi. The Audi driver and passenger had stayed with their car, but the occupants of the Cadillac had left the accident scene on foot. Deputy Meyer observed that a gun and cell phone were on the driver's side floor of the Cadillac.

Deputies Meyer and Dallon requested a canine unit to help search for the Cadillac's occupants. Deputy Clint Herman and his canine partner, Attila, conducted a dog track originating from the driver's side door and driver's seat of the Cadillac. Attila alerted on a gray sweatshirt and baseball hat near a Walgreens store, and then alerted on a figure hiding under some bushes, who was subsequently identified as Clay.

After being taken into custody, Clay said that a person named Bam was driving the Cadillac, and that he did not know anything about a gun when asked

who owned the gun in the Cadillac. When the deputies were discussing about going to retrieve the baseball hat and gray sweatshirt in the Walgreens parking lot, Clay said, "Get my hat, too."[1] Although Deputy Meyer thought there could be a third suspect, he reported that all suspects were in custody after further searching.

Clay was charged with attempting to elude a pursuing police vehicle with a special allegation of endangerment to others, unlawful possession of a firearm in the first degree, and hit and run of an attended vehicle.

At trial, the Audi driver testified that he saw two men exit the Cadillac but did not see who was driving. Victor Gaspar, who had witnessed the accident, testified that he saw two men run away from the accident scene. Gaspar testified that one was a white or Hispanic male wearing a light gray or white sweatshirt, who was later brought back to the accident scene by deputies without his sweatshirt.

Kale Elder testified that he observed the accident and saw two men exit one after the other through the passenger side door of the Cadillac and run away. Elder stated that the second person to exit the Cadillac was wearing a gray sweatshirt and a hat. Elder saw the second man run northwest toward the Walgreens. Elder briefly gave chase and flagged down a sheriff's deputy to give a description of the person he had been pursuing.

Shortly after, Elder was approached by the first person to exit the vehicle, who voluntarily walked back to the accident scene with Elder. When police brought

---

[1] Report of Proceedings (Jan. 25, 2016) at 480.

3

Clay back to the accident scene, Elder identified him as the second occupant that had exited the vehicle.

A jury convicted Clay of attempting to elude a police vehicle and of hit and run of an attended vehicle, and answered yes to the special allegation of endangerment of another. The jury found him not guilty of unlawful possession of a firearm.

Clay appeals.

## ANALYSIS

### Sufficiency of the Evidence

Clay argues that the State failed to prove every essential element of his offenses because there was insufficient evidence at trial that he was the driver of the Cadillac. Because a rational trier of fact could have found the essential element of identity, when viewing the evidence at trial in the light most favorable to the State, we disagree.

Evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Here, Clay was convicted of attempting to elude a police vehicle and of hit and run of an attended vehicle. For both offenses, the State had to prove that Clay was the driver of the Cadillac. See RCW 46.61.024(1); RCW 46.52.020(2).

The State's evidence at trial established that two men exited the Cadillac through the passenger's side door, one after the other, while none exited through the driver's side door. The second person to exit was Clay, wearing a gray sweatshirt. Clay began running in the direction of the Walgreens. Attila's dog track from the driver's side door and driver's seat of the car first located a gray sweatshirt near the Walgreens, then Clay himself. When Clay was brought back to the scene, he was identified by witnesses as the second person to exit the Cadillac who had previously been wearing a gray sweatshirt.

From this evidence, it is reasonable to infer that the second person to exit the Cadillac through the passenger's side door came from the driver's seat, as it is unlikely that the driver climbed over the passenger prior to both men running away from the car. Further, it is reasonable to infer that the person whose scent was tracked from the driver's side of a vehicle was the driver of that vehicle.

Taking the State's evidence and all reasonable inferences therefrom as true, a rational trier of fact could have found the essential element of both offenses that Clay was the driver of the Cadillac beyond a reasonable doubt. Therefore, we conclude that the evidence at trial was sufficient to sustain Clay's convictions.

## Admission of Out-of-Court Statements

Clay argues that the trial court erred in admitting his statements to the deputies because they were barred by corpus delicti.[2] Specifically, he contends that the State did not provide sufficient independent corroborating evidence establishing that he was the driver of the Cadillac. Because there was sufficient independent evidence in the record to establish a prima facie case of Clay's offenses, including that he was the driver of the Cadillac, we disagree.

"'*Corpus delicti*' literally means 'body of the crime.'" State v. Aten, 130 Wn.2d 640, 655, 927 P.2d 210 (1996) (quoting 1 MCCORMICK ON EVIDENCE § 145, at 227 (John W. Strong ed., 4th ed. 1992)). The body of the crime generally consists of an injury or loss and a criminal act that caused the injury or loss. City of Bremerton v. Corbett, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986).

The corpus delicti "must be proved by evidence sufficient to support the inference that there has been a criminal act." State v. Brockob, 159 Wn.2d 311, 327, 150 P.3d 59 (2006). This evidence must "'*prima facie* establish[] the *corpus delicti*,'" meaning that there is "'evidence of sufficient circumstances which would support a logical and reasonable inference' of the facts sought to be proved." Aten, 130 Wn.2d at 656 (quoting State v. Meyer, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951); State v. Vangerpen, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995)).

"[C]onfessions or admissions of a person charged with a crime are not sufficient, standing alone, to prove the corpus delicti and must be corroborated by

---

[2] Clay raises this argument for the first time on appeal. In light of our Supreme Court's recent decision in State v. Cardenas-Flores, Clay may properly raise this argument without having objected at trial. State v. Cardenas-Flores, No. 93385-5, 2017 WL 3527499, at *12 (Wash. Aug. 17, 2017).

other evidence." Aten, 130 Wn.2d at 655-56. "The evidence need not be enough to support a conviction or send the case to the jury." Aten, 130 Wn.2d at 656.

Here, Clay was convicted of attempting to elude a police vehicle with a special allegation of endangerment of another and of hit and run of an attended vehicle. On appeal, he challenges only the essential element of both offenses that he was the driver of the Cadillac. Clay told the deputies that he was not the driver of the Cadillac, and requested that they "get [his] hat" when the deputies were discussing retrieving the abandoned clothing in the Walgreens parking lot.

Assuming that these statements could be considered admissions that Clay was the driver of the Cadillac, the State produced sufficient independent evidence to corroborate his statements and establish the corpus delicti of the charged offenses. As discussed above, the State presented witness testimony and evidence of Attila's dog track that established the reasonable inference that Clay was the driver of the Cadillac. Thus, the State presented sufficient independent evidence to establish the corpus delicti of Clay's offenses, and we reject Clay's argument.

Clay argues that the evidence at trial only established that he was present at the site of the accident, and thus was insufficient to sustain his convictions, analogizing to State v. Hamrick, 19 Wn. App. 417, 576 P.2d 912 (1978).

In Hamrick, Division Two of this court affirmed the dismissal of the defendant's charge of driving while intoxicated when his admissions to the police were the only evidence that he was the driver of the car, and thus the State had not established the corpus delicti. 19 Wn. App. at 418, 420.

Hamrick is distinguishable from the present case. Clay's statements to the deputies were that Bam was driving the Cadillac and a request to retrieve his hat. Neither statement was an admission that he was the driver of the car at issue, as occurred in Hamrick. Further, as discussed above, the State produced sufficient independent evidence establishing the corpus delicti of Clay's charged offenses that any admission by Clay that he was the driver of the Cadillac would have been admissible. We reject Clay's argument.

### Appellate Costs

Clay asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. But when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, the trial court found that Clay was indigent and imposed only mandatory legal financial obligations. If the State has evidence indicating that Clay's financial circumstances have significantly improved since the court's finding, it may file a motion for costs with the commissioner.

Affirmed.

Trickey, ACJ

WE CONCUR:

Leach, J.

Becker, J.

8