
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUN 18 AM 8: 37

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) ) | No. 76076-9-I |
| v. | ) ) | UNPUBLISHED OPINION |
| BINIAM PETROS DUBISO, | ) ) | |
| Appellant. | ) ) | FILED: June 18, 2018 |

DWYER, J. — Biniam Dubiso was charged and convicted of attempted rape in the second degree and attempted residential burglary with sexual motivation. On appeal, Dubiso contends that the trial court erred by failing to consider his request to proceed with a bench trial. Dubiso also contends that the State failed to present evidence establishing the corpus delicti of the crimes of which he was convicted. Finding no error, we affirm.

I

In early May 2016, Julia Brooker travelled from her home in Nevada to visit her friend, Kristyn Graham, in Federal Way. On May 2, Brooker took public transportation to downtown Seattle to sight-see. Brooker decided to return to Federal Way around 2:00 pm. Unfortunately, Brooker took the wrong bus and ended up in Auburn. Brooker eventually transferred to a bus heading toward Federal Way.

When Brooker finally reached Federal Way, she decided to stop by a grocery store and purchase ingredients to make dinner for Graham and herself. Brooker exited the bus, walked across a parking lot, and entered Fred Meyer. Brooker observed a man—later identified as Biniam Dubiso—exit the bus at the same stop as her. Brooker observed Dubiso follow her through the parking lot and into Fred Meyer.

Brooker walked through the store and went into the restroom, where she spent a few extra minutes charging her cell phone. Brooker then plugged her cell phone into an outlet in the hallway outside of the restroom. After waiting a while for her phone to charge, Brooker decided to shop for groceries. Brooker noticed that Dubiso "kind of kept randomly popping up" around the store, but that "it appeared as if he was shopping himself."

Brooker decided to charge her cell phone one last time before exiting the store. Brooker found an outlet near the store entrance and waited there for several minutes for her cell phone to charge. While she was waiting for her phone to charge, Brooker observed Dubiso standing just outside of the front doors, looking into the parking lot. Brooker assumed that Dubiso must have been waiting for a ride.

Brooker sent a text message to Graham, letting Graham know that she was about to leave the store. As Brooker began to walk through the parking lot, she realized that Dubiso was behind her. Dubiso followed Brooker through the parking lot and across the street. Brooker grew concerned and began to walk faster, but Dubiso picked up his pace and continued to follow her. Brooker

abruptly changed the direction that she was walking and cut across a patch of grass, but Dubiso continued to follow her.

Brooker was frightened and believed that Dubiso intended to hurt her. Brooker called Graham on her cell phone. While she was on the phone with Graham, Dubiso came within arm's distance of Brooker. Brooker spun around and asked Dubiso if he was following her. Dubiso put his hands up and said no, but Brooker did not believe him. Brooker turned around and resumed her brisk walk toward Graham's apartment. Brooker could hear Dubiso continue to follow her.

Graham was waiting outside of her apartment on the ground floor. When Brooker reached the stairs leading up to the apartment, she told Graham that Dubiso was following her and that they needed to quickly go inside the apartment. Graham and Brooker ran up the stairs and into the apartment, locking the door behind them. Within seconds, Dubiso began trying to enter the apartment. Dubiso tried to forcibly enter the apartment by banging on the door and jiggling the handle. Graham and Brooker screamed and shouted that they were going to call the police.

Graham pushed against the door from the inside of the apartment while Brooker called 911. Brooker provided a description of Dubiso to the emergency operator and stayed on the phone until the police arrived, around 10 to 15 minutes later. While Graham and Brooker were waiting for the police to arrive, Dubiso descended the stairs and lingered around the apartment complex for

several minutes. Police arrested Dubiso at the scene and Brooker positively identified him as the man who had followed her.

Officer Andrew Hensing interviewed Dubiso following his arrest. Dubiso admitted that he was on the same bus to Auburn as Brooker and that he transferred buses and followed Brooker to Federal Way. Dubiso admitted that he followed Brooker into Fred Meyer and waited for her to leave. Dubiso stated that he followed Brooker because he liked her and thought that she was pretty.

Dubiso admitted that he followed Brooker to the apartment. Dubiso admitted that he chased Brooker up the stairs and tried to force his way into the apartment. Dubiso stated that he did these things because he loved Brooker. Dubiso stated that he knew that it was not okay to force his way into someone's apartment, but that he did so anyway because he was not going to hurt Brooker. Dubiso stated that he was not going to kill Brooker, but admitted that he was going to have sex with Brooker whether or not she consented.

Dubiso was charged and convicted of attempted rape in the second degree and attempted residential burglary with sexual motivation. He appeals from the judgment entered on the jury's verdicts.

## II

Dubiso first contends that the trial court erred by failing to consider his request to proceed with a bench trial. We disagree.

There is no constitutional right to a nonjury trial. Newsome v. Shields, 10 Wn. App. 505, 506, 518 P.2d 741 (1974) (citing Singer v. United States, 380 U.S. 24, 34, 85 S. Ct. 783, 13 L. Ed. 2d 630 (1965)). A defendant may waive his or

her right to a jury trial only with the consent of the trial court. CrR 6.1(a); RCW 10.01.060. We review a trial court's denial of a jury trial waiver for an abuse of discretion "to ensure that the trial court did not merely deny the request by rote but that it exercised discretion with an eye to ensuring a fair trial." State v. McKague, 159 Wn. App. 489, 500, 246 P.3d 558 (2011), aff'd, 172 Wn.2d 802, 262 P.3d 1225 (2011). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. McKague, 159 Wn. App. at 500. To establish reversible error, the defendant must show that he was prejudiced by having his case tried before a jury. State v. Maloney, 78 Wn.2d 922, 928, 481 P.2d 1 (1971).

Here, at his competency evaluation, Dubiso expressed confusion as to the role of a jury in criminal proceedings.[1] When asked to describe the role of a jury, Dubiso stated that he "only wanted a judge and not a jury as jurors have no education in legal matters and are not experts in the area." Dubiso went on to explain that a jury was a "[c]ollection of people from a group; 12 people," and that the jury decides "[r]elease or not." Dubiso also stated that there was "no witness in this case" and that Brooker "can't be a witness for herself." Dubiso asserted that he was unwilling to work with counsel and that he wanted to represent himself. Dubiso stated that he understood English well enough and did not want an interpreter. Dubiso was found competent to stand trial.

---

[1] Dubiso is an immigrant from Ethiopia. He reportedly speaks English "fairly fluent[ly]" but often has to have questions repeated for him. The Ethiopian legal system does not employ jury trials. U.S. Dept. of State, Ethiopia 2014 Human Rights Report Executive Summary at 8, https://www.state.gov/documents/organization/236570.pdf.

The trial court engaged in several colloquies with Dubiso regarding the jury selection process, the role of the jury, and the role of the judge. For example, the judge explained to Dubiso that the jury would determine guilt and that, if he was found guilty, sentencing would come later. Dubiso inquired as to how the jury selection process works and who can ask the potential jurors questions. Dubiso requested an allotment of 12 or 13 minutes to question the potential jurors. (However, Dubiso later changed his mind and declined to ask any questions during voir dire.) When Dubiso expressed that he wanted the trial court to "consider everything[]" the judge explained that "[i]t's not a trial to the Court; it's a jury trial, not a bench trial. I won't be making the decision whether you're guilty or not guilty because we're going to have a jury do that."

Although Dubiso was, at times, confused about the role of the judge, the jury, and the prosecutor, he clearly and repeatedly communicated his requests to the trial court. We note that Dubiso clearly and unequivocally requested to represent himself at trial—a request that the trial court granted. However, Dubiso never expressed to the trial court—either verbally or in writing—that he wished to waive his right to a jury trial and proceed with a bench trial. Because Dubiso never requested to proceed with a bench trial, the trial court had no opportunity to rule on this issue. Accordingly, it did not abuse its discretion by proceeding with a jury trial.

Nevertheless, Dubiso contends that the trial court erred by failing to inquire, sua sponte, whether he would prefer a jury trial or a bench trial. But no authority requires trial courts to so inquire. Rather, the onus is on the defendant

to request permission from the court to proceed with a bench trial. CrR 6.1(a); RCW 10.01.060. In any event, Dubiso has made no showing that he "was prejudiced in any manner in having his cause heard before a jury." Maloney, 78 Wn.2d at 928. Accordingly, he has failed to establish a basis for appellate relief.

III

Dubiso next contends that the State failed to present independent evidence sufficient to establish the corpus delicti of attempted rape in the second degree and attempted residential burglary with sexual motivation. We disagree.

"Corpus delicti means the 'body of the crime.'" State v. Brockob, 159 Wn.2d 311, 327, 150 P.3d 59 (2006) (internal quotation marks omitted) (quoting State v. Aten, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). The body of the crime "usually consists of two elements: (1) an injury or loss (e.g., death or missing property) and (2) someone's criminal act as the cause thereof." City of Bremerton v. Corbett, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986). "However, crimes such as attempt, conspiracy, perjury, and reckless or drunken driving do not require the first corpus delicti element, injury or loss." State v. Smith, 115 Wn.2d 775, 781, 801 P.2d 975 (1990).

"The corpus delicti 'must be proved by evidence sufficient to support the inference that' a crime took place, and the defendant's confession 'alone is not sufficient to establish that a crime took place.'" State v. Cardenas-Flores, 189 Wn.2d 243, 252, 401 P.3d 19 (2017) (quoting Brockob, 159 Wn.2d at 327-28). Specifically, "[t]he State must present other independent evidence . . . that the

crime a *defendant described in the [confession]* actually occurred." Brockob, 159 Wn.2d at 328.

> Essentially, corpus delicti is a corroboration rule that "prevent[s] defendants from being unjustly convicted based on confessions alone." [State v.] Dow, 168 Wn.2d [243,] 249[, 227 P.3d 1278 (2010)]; see also 1 KENNETH S. BROUN ET. AL., MCCORMICK ON EVIDENCE § 145, at 802 n.7 (7th ed. 2013) ("The corroboration requirement rests upon the dual assumptions that [the] risk[ ] of inaccurac[ies] are serious . . . and that juries are likely to accept confessions uncritically.").

Cardenas-Flores, 189 Wn.2d at 252.

Our Supreme Court has held that corpus delicti is a rule of sufficiency that may be raised, as here, for the first time on appeal. Cardenas-Flores, 189 Wn.2d at 257, 263. "Under the Washington rule . . . the evidence must independently *corroborate*, or confirm, a defendant's" confession. Brockob, 159 Wn.2d at 328-29. "The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof. It is sufficient if it *prima facie* establishes the *corpus delicti*." State v. Meyer, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951). "Prima facie corroboration . . . exists if the independent evidence supports a 'logical and reasonable inference of the facts'" that the State seeks to prove. Brockob, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting Aten, 130 Wn.2d at 656). "While the State must establish the mental element of the crime beyond a reasonable doubt to sustain a conviction, mens rea is not required to satisfy corpus delicti." Cardenas-Flores, 189 Wn.2d at 263-64. Indeed, "corroborating evidence need 'only tend to show the "major" or "essential" harm involved in the

offense charged and not all of the elements technically distinguished.'"
Cardenas-Flores, 189 Wn.2d at 264 n.9 (quoting 1 BROUN, supra, § 146, at 810).

"On appeal, any error in the admission of a confession under corpus delicti is necessarily considered in light of *all the evidence at trial*, not simply the foundation laid when the confession is offered." Cardenas-Flores, 189 Wn.2d at 262. "In determining whether there is sufficient evidence of the corpus delicti independent of the defendant's statements, we assume the 'truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State.'" Cardenas-Flores, 189 Wn.2d at 264 (quoting Aten, 130 Wn.2d at 658).

Here, Dubiso was charged with attempted rape in the second degree pursuant to RCW 9A.28.020 and RCW 9A.44.050(1)(a),[2] as well as attempted residential burglary pursuant to RCW 9A.28.020 and RCW 9A.52.025(1).[3] To establish the corpus delicti of these crimes, the State had to present prima facie evidence that someone took a substantial step to enter a dwelling unlawfully and engage in sexual intercourse with another person by forcible compulsion. State v. Vangerpen, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995). "Conduct is a substantial step if it is strongly corroborative of the actor's criminal purpose." Vangerpen, 125 Wn.2d at 796. As discussed herein, independent evidence is

---

[2] RCW 9A.28.020 is the criminal attempt statute and provides, in pertinent part, that "[a] person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime. RCW 9A.44.050(1)(a) provides, in pertinent part, that "[a] person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . . [b]y forcible compulsion."

[3] RCW 9A.52.025(1) provides, in pertinent part, that "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." The State alleged that this crime was committed for the purpose of sexual motivation. RCW 9.94A.835.

sufficient if it supports a logical and reasonable inference of the facts that the State seeks to prove. Cardenas-Flores, 189 Wn.2d at 264. The evidence presented by the State here included the testimony of Brooker and Graham and a surveillance video showing Dubiso follow Brooker around Fred Meyer.

Sufficient evidence prima facie establishes the fact that the crimes of attempted rape in the second degree and attempted residential burglary with sexual motivation occurred. Dubiso followed Brooker to Auburn, transferred busses with her to Federal Way, followed her through Fred Meyer, followed her to Graham's apartment complex, and chased her up the stairs. Once Brooker and Graham were safely inside the apartment, Dubiso tried to forcibly enter the apartment. Considering all of the circumstances and drawing all reasonable inferences in the light most favorable to the State, independent evidence supports the logical and reasonable inference that someone took a substantial step toward attempted residential burglary and attempted rape.

IV

Finally, Dubiso contends that his convictions for attempted rape in the second degree and attempted residential burglary with sexual motivation were not supported by substantial evidence. We disagree.

"Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." Cardenas-Flores, 189 Wn.2d at 265. "A claim of evidentiary insufficiency admits the truth of the

State's evidence and all reasonable inferences from that evidence." State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200 (2015).

Here, because the State satisfied corpus delicti, Dubiso's confession to the police was properly considered by the jury. Dubiso admitted that he followed Brooker and intended to have sex with her, with or without her consent. The evidence establishing corpus delicti, coupled with Dubiso's confession, provides overwhelming evidence that he committed the crimes of attempted rape in the second degree and attempted residential burglary with sexual motivation.

Affirmed.

We concur: