## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50436-7-II |
| Respondent, | |
| v. | |
| DESHANNA NICOLE PALMER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — DeShanna Nicole Palmer appeals her jury trial conviction for forgery.[1] She argues that the trial court erred when it denied her motion to dismiss the forgery charge for lack of corpus delicti. Palmer also challenges the trial court's imposition of a deoxyribonucleic acid (DNA) collection fee, a criminal filing fee, a crime victim penalty assessment, and a criminal fine, as well as an interest provision in her judgment and sentence. We affirm the forgery conviction and the imposition of the crime victim penalty assessment and criminal fine. But, in light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), and the Laws of Washington 2018, ch. 269, we remand for the trial court to strike the interest provision, to determine whether the DNA collection fee has been collected and whether Palmer is indigent for the purpose of waiving the criminal filing fee, and to amend the judgment and sentence accordingly.

---

[1] Palmer was also convicted of first degree criminal trespass. She does not challenge that conviction.

FACTS

I. BACKGROUND

On June 3, 2016, Palmer entered a Key Bank branch and attempted to cash a check that appeared to be drawn on a Key Bank account for Bartell Drugs. The teller, Ruby Bates, was familiar with checks issued by Bartell Drugs and noticed that this check looked unusual because "[t]he coloring was off." 4 Report of Proceedings (RP) at 304. After obtaining two forms of identification from Palmer, Bates determined that the check number was out of sequence with the other checks in the Bartell Drugs account. Bates then told Palmer that she (Bates) had to call Bartell Drugs to verify the check and moved away from the teller window to make the call.

As Bates was waiting for verification of the check, she noticed that Palmer was pacing back and forth. Palmer "demand[ed]" that Bates return the check, but Bates said that she needed to verify the check first. 4 RP at 310. Palmer "then got really loud and really aggressive," reached over the secured teller door, opened the door from the inside, entered the teller area, and rushed towards Bates demanding that Bates return the check. 4 RP at 310. Another teller blocked Palmer's path, but Palmer continued reaching towards Bates and trying to "snatch the check from [Bates's] hand." 4 RP at 313. According to Bates, Palmer knocked the phone out of her (Bates's) hand and scratched her arm. Palmer eventually returned to the lobby where she continued to pace and yell. The bank employees activated an alarm and called the police.

Bates later testified that Palmer was "on and off her phone" during most of their interactions. 4 RP at 324. Another teller later testified that when Palmer was demanding her check, she (the teller) also heard Palmer "saying that she needed to go get something or someone was waiting for her." 4 RP at 348.

When the police arrived, Palmer was outside the bank talking loudly on her phone. Palmer appeared "upset and disheveled" and was "screaming and ranting" something that the officers could not understand as she approached them. 4 RP at 357. The officers calmed her down, placed her in restraints, and advised her of her *Miranda*[2] rights.

According to the officers, Palmer initially asserted that the check was a settlement for an injury she had sustained in a Bartell Drugs store and "that she had recently received it within a matter of days just prior to June 3rd." 4 RP at 360. She told the officers that she had come to the bank to cash the check and that the teller had refused to return the check after Palmer received a message from her daughter and needed to leave. But, according to Officer Mark Dorn, Palmer later told him that she knew the check was "fake" and that she was trying to cash it so she could pay her rent. 4 RP at 365-66, 368-69.

On the front of the check, there was an address for Palmer. There was a different address on the back of the check as part of the endorsement. Neither address matched the address for Palmer on file with the Department of Licensing. The check was dated June 3, the date of the incident.

## II. PROCEDURE

The State charged Palmer with second degree burglary, forgery, and fourth degree assault. The State's witness testified as described above.

In addition to the facts above, Palmer repeatedly asked Bates on cross-examination whether she had returned the check to Palmer when Palmer demanded it. On redirect, the State asked Bates

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

if she gave the check back to Palmer, Bates responded, "No. The check was told to be stolen and fraudulent." 4 RP at 330. Palmer objected on hearsay grounds and moved to strike. The trial court overruled the objection stating, "It explains [Bates's] motive for keeping the check that was asked on cross-examination." 4 RP at 330. The trial court did not give, and neither party requested, a limiting instruction.

Palmer also objected on corpus delicti grounds when Officer Dorn started to testify about Palmer's admission to him that she knew the check was "fake." 4 RP at 365-66. The trial court overruled the objection.

After the State rested its case, Palmer moved to dismiss the forgery charge for lack of corpus delicti establishing that the check was forged. The trial court denied the motion. The jury found Palmer guilty of forgery and the lesser included offense of first degree criminal trespass.[3]

At sentencing, the trial court imposed a $500 crime victim penalty assessment on the first degree criminal trespass conviction. On the forgery conviction, the trial court imposed (1) a $500 crime victim penalty assessment, (2) a $100 DNA database fee, (3) a $200 criminal filing fee, and (4) a $250 criminal fine. The judgment and sentence also stated that "[t]he financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. RCW 10.82.090." Clerk's Papers (CP) at 124. The superior court subsequently found Palmer indigent for purposes of appeal.

Palmer appeals her forgery conviction, the interest provision, the DNA collection fee, the criminal filing fee, the crime victim penalty assessment, and the criminal fine.

---

[3] The jury found Palmer not guilty of fourth degree assault.

ANALYSIS

I. CORPUS DELICTI

Palmer first argues that the trial court erred in denying her motion to dismiss based on the lack of corpus delicti. She contends that there was no independent evidence that (1) the check was forged, or (2) she knew the check was forged and intended to defraud the bank by cashing the check. These arguments fail.

A. LEGAL PRINCIPLES

"[C]orpus delicti is a corroboration rule that 'prevent[s] defendants from being unjustly convicted based on confessions alone.'" *State v. Cardenas-Flores*, 189 Wn.2d 243, 252, 401 P.3d 19 (2017) (alteration in original) (quoting *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010)). "The corpus delicti 'must be proved by evidence sufficient to support the inference that' a crime took place, and the defendant's confession 'alone is not sufficient to establish that a crime took place.'" *Cardenas-Flores*, 189 Wn.2d at 252 (quoting *State v. Brockob*, 159 Wn.2d 311, 327-28, 150 P.3d 59 (2006)).

"Under the Washington rule, . . . the evidence must independently corroborate, or confirm, a defendant's" confession. *Brockob*, 159 Wn.2d at 328-29 (emphasis omitted). "The independent evidence 'must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence.'" *Cardenas-Flores*, 189 Wn.2d at 264 (internal quotation marks omitted) (alternation in original) (quoting *Brockob*, 159 Wn.2d at 329). "The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime described in a defendant's incriminating statement." *Brockob*, 159 Wn.2d at 328 (emphasis omitted) (citing *State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996)). "Prima facie corroboration . . . exists if the

independent evidence supports a 'logical and reasonable inference of the facts'" that the State seeks to prove. *Brockob*, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656).

"Corpus delicti generally involves only two elements: (1) an injury or loss (e.g., death or missing property), and (2) someone's criminal act as the cause thereof." *State v. C.M.C.*, 110 Wn. App. 285, 289, 40 P.3d 690 (2002) (citing *City of Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986)). The "corroborating evidence need 'only tend to show the "major" or "essential" harm involved in the offense charged and not all of the elements technically distinguished.'" *Cardenas-Flores*, 189 Wn.2d at 264 n.9 (quoting 1 Kenneth S. Broun et. al., McCormick on Evidence § 146, at 810 (7th ed. 2013)). "While the mens rea is an essential element of the offense, it is separate and distinct from the initial question of whether the body of the crime has been established." *C.M.C.*, 110 Wn. App. at 289 (citing *Aten*, 130 Wn.2d at 655-56; *State v. Burnette*, 78 Wn. App. 952, 956, 904 P.2d 776 (1995)); *see also Cardenas-Flores*, 189 Wn.2d at 263-64.

"We review de novo whether sufficient corroborating evidence exists to satisfy the corpus delicti rule." *State v. Hotchkiss*, 1 Wn. App. 2d 275, 279, 404 P.3d 629 (2017), *review denied*, 190 Wn.2d 1005 (2018). Our Supreme Court has held that corpus delicti is a rule of sufficiency that may be raised for the first time on appeal. *Cardenas-Flores*, 189 Wn.2d at 257, 263. Thus, "[o]n appeal, any error in the admission of a confession under corpus delicti is necessarily considered in light of all the evidence at trial, not simply the foundation laid when the confession is offered." *Cardenas-Flores*, 189 Wn.2d at 262 (emphasis omitted). "In determining whether there is sufficient evidence of the corpus delicti independent of the defendant's statements, we assume the

'truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State.'" *Cardenas-Flores*, 189 Wn.2d at 264 (quoting *Aten*, 130 Wn.2d at 658).

B. FORGERY

Palmer argues that there was no evidence independent of her statement to Officer Dorn establishing that the check was forged. We disagree.

"Forged instrument' means a written instrument, which has been falsely made, completed or altered." CP at 104 (Jury Instr. 21). Bates testified that she was familiar with checks on the Bartell's account and that this check looked different. She also testified that the check was not in sequence with the other checks in the account on which it was drawn. The fact that the addresses on the check, the endorsement, and Palmer's identification did not match also suggested that the check may not have been valid. Similarly, the date on the check was the date of the attempted transaction, even though Palmer claimed to have received the check before that date. Additionally, Palmer's behavior and actions when Bates attempted to verify the check, including Palmer's dramatic attempts to get the check back, were inconsistent with someone simply waiting for a teller to verify a valid check. And, finally, Bates testified that "[t]he check was told to be stolen and fraudulent," and the trial court did not give a limiting instruction related to this testimony. 4 RP at 330. Taking this evidence in the light most favorable to the State, the evidence as a whole supports a logical and reasonable inference that the check was forged. Thus, Palmer's corpus delicti argument related to the forgery element fails.

C. KNOWLEDGE AND INTENT

As to Palmer's argument that there was no independent evidence that she knew the check was forged and that she intended to defraud the bank by cashing the check, the "corroborating

evidence need 'only tend to show the "major" or "essential" harm involved in the offense charged and not all of the elements technically distinguished.'" *Cardenas-Flores*, 189 Wn.2d at 264 n.9 (quoting 1 Broun, supra, § 146, at 810). "While the State must establish the mental element of the crime beyond a reasonable doubt to sustain a conviction, mens rea is not required to satisfy corpus delicti." *Cardenas-Flores*, 189 Wn.2d at 263-64. Palmer's knowledge and intent are mental elements. Thus, they are not relevant to corpus delicti, and Palmer's corpus delicti argument fails.

## II. LFOs

In a supplemental brief, Palmer argues that because the trial court found her to be indigent, this matter must be remanded back to the trial court to strike the LFOs and interest provisions that are no longer authorized after the legislative amendments enacted in Laws of Washington 2018, ch. 269. She also argues that "the trial court failed to follow the statutory requirements of RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015), which were further refined by *Ramirez* . . ., and properly evaluate her 'ability to pay' before imposing the discretionary fine." Suppl. Br. of Appellant at 3. Specifically, she challenges (1) the interest provision, (2) the $100 DNA database collection fee, (3) the $200 criminal filing fee, (4) the $500 crime victim assessment fee, and (5) the criminal fine.

A. LEGISLATIVE AMENDMENT AND *RAMIREZ*

In 2018, our legislature enacted Second Substitute House Bill (SSHB) 1783, effective June 7, 2018, which amended several statutes related to the imposition of discretionary costs on indigent defendants and interest on such costs. *See* LAWS OF 2018, ch. 269. In *Ramirez*, our Supreme Court held that these amendments applied to cases that are not yet final. 426 P.3d at 722-23.

B. INTEREST PROVISION

As amended, RCW 10.82.090 now provides:

(1) Except as provided in subsection (2) of this section, restitution imposed in a judgment shall bear interest from the date of the judgment until payment, at the rate applicable to civil judgments. *As of the effective date of this section [June 7, 2018], no interest shall accrue on nonrestitution legal financial obligations.*

*See* Laws of 2018, ch. 269, § 1.

Under the amended statute, the interest provision in Palmer's judgment and sentence, to the extent it applies to non-restitution financial obligations, must be stricken. Accordingly, we remand for the trial court to strike this provision from the judgment and sentence as required.

C. DNA COLLECTION FEE

RCW 43.43.754(1)(a) requires that a biological sample be collected for purposes of DNA identification analysis from everyone convicted of a felony. RCW 43.43.7541 now provides: "Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars *unless the state has previously collected the offender's DNA as a result of a prior conviction.*" *See* LAWS OF 2018, ch. 269, § 18.

Palmer has several prior felony convictions. Thus, if Palmer has already paid the DNA collection fee, the trial court erred when it imposed this fee in the current judgment and sentence. Whether Palmer previously paid the DNA collection fee was not addressed at sentencing.[4] Accordingly, on remand the trial court should determine whether the DNA collection fee has been collected and amend the judgment and sentence accordingly if the DNA collection fee has already been collected.

---

[4] We note that the State did not respond to Palmer's supplemental briefing addressing the LFOs.

D.  CRIMINAL FILING FEE

RCW 36.18.020(2)(h) now provides: "Upon conviction or plea of guilty, . . . an adult

defendant in a criminal case shall be liable for a fee of two hundred dollars, *except this fee shall*

*not be imposed on a defendant who is indigent* as defined in RCW 10.101.010(3) (a) through (c)."

Thus, on remand, the trial court should strike the $200 criminal filing fee if Palmer remains

indigent as defined in RCW 10.101.010(3)(a) through (c).

E.  CRIME VICTIM PENALTY ASSESSMENT, RCW 9.94A.760

The crime victim penalty assessment is set out in RCW 7.68.035.  It provides, in part:

> (1)(a) When any person is found guilty in any superior court of having committed a crime, except as provided in subsection (2) of this section, there shall be imposed by the court upon such convicted person a penalty assessment.  The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor and two hundred fifty dollars for any case or cause of action that includes convictions of only one or more misdemeanors.

RCW 7.68.035(1)(a).  RCW 7.68.035(2) does not apply here because this is not a motor vehicle

crime defined in Title 46 RCW.

RCW 9.94A.760 now provides:

> (1) Whenever a person is convicted in superior court, the court may order the payment of a legal financial obligation as part of the sentence.  The court may not order an offender to pay costs as described in RCW 10.01.160 if the court finds that the offender at the time of sentencing is indigent as defined in RCW 10.101.010(3) (a) through (c).  *An offender being indigent as defined in RCW 10.101.010(3) (a) through (c) is not grounds for failing to impose restitution or the crime victim penalty assessment under RCW 7.68.035.*

LAWS OF 2018, ch. 269, § 14. Because indigency is not grounds for failing to impose the crime victim penalty assessment, the trial court did not err when it imposed this assessment.

F. FINE

Finally, Palmer challenges the $250 criminal fine. She argues that because this was a "discretionary fine," the trial court was required under RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015), as "further refined by *Ramirez*," to evaluate her ability to pay before imposing the fine. Suppl. Br. of Appellant at 3.

RCW 9.94A.550 allows, but does not require, sentencing courts to impose fines on adult felony offenders. *See also* RCW 9A.20.021 (setting the maximum amount of fines). But the authorities that Palmer relies on address costs, not criminal fines, and criminal fines are not considered costs that are subject to the statutory requirement that the sentencing court inquire into the defendant's ability to pay before imposing the criminal fine. *State v. Clark*, 191 Wn. App. 369, 362 P.3d 309 (2015). Accordingly, this argument fails.

## CONCLUSION

We affirm Palmer's forgery conviction and the imposition of the crime victim penalty assessment and the criminal fine. But we remand for the trial court to strike the interest provision, to determine whether the DNA collection fee has been collected and whether Palmer is indigent

No. 50436-7-II

for the purpose of waiving the criminal filing fee in light of *Ramirez* and the Laws of Washington 2018, ch. 269, and to amend the judgment and sentence accordingly.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

WORSWICK, J.

12